54 A.3d 35

COMMONWEALTH of Pennsylvania, Appellee

v.

Jose BUSANET, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 3, 2012.

Decided Oct. 19, 2012.

4

Helen A. Marino, Defender Association of Philadelphia, Philadelphia, Eric John Montroy, Federal Community Defender Office, Easter District of PA, Shawn Nolan, Defender Association of Philadelphia, for Jose Busanet.

Alisa Rebecca Hobart, Berks Country District Attorney's Office, Amy Zapp, PA Office of Attorney General, Harrisburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

Following several evidentiary hearings in this post-conviction capital case, the Court of Common Pleas of Berks County ("PCRA court") dismissed the petition filed by Appellant Jose Busanet pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. For the reasons set forth herein, we affirm.[1]

The facts underlying Appellant's conviction of first degree murder and related offenses are discussed in our opinion affirming his judgment of sentence on direct appeal. *Commonwealth v. Busanet*, 572 Pa. 535, 817 A.2d 1060 (2002). We shall reiterate those facts which are relevant to the claims raised in Appellant's PCRA petition.

In the spring of 1997, Wilson Melendez and Nsilo Lane[2] worked for Appellant, who was a drug dealer in Reading, Pennsylvania. In May of that year, Lane told Melendez and Appellant that Jason Bolton ("the victim"), a rival drug dealer, had stolen Lane's gold chain and money. Appellant responded by telling Lane that he was going to kill the victim in retribution. Sometime thereafter, Appellant learned that the victim had made threats against him. The next month, on June 11, 1997, Appellant was at the home of LaDonna Johnson with Melendez, Richard Boxley, and Tamika Johnson. While there, Tamika heard Appellant state that the victim had 48 hours to live because he had robbed Lane. Shortly thereafter, at Appellant's request, Melendez and Boxley left the house to buy cigars at a corner store, and observed the victim walking down the street. Boxley then ran to tell Appellant the victim's whereabouts.

Moments later, Appellant and Boxley met Melendez on the street, and the three men followed the victim for several

1. This Court has exclusive jurisdiction to review a final order denying relief in a capital case. 42 Pa.C.S. § 9546(d).

2. In our opinion on direct appeal, Lane is referred to as "Celo." *Busanet,* 817 A.2d at 1064.

blocks, during which time Appellant stated he was going to kill the victim in broad daylight. After the victim turned a corner, Appellant directed Melendez to see where he went. Melendez reported that the victim was standing on the street and speaking to someone on the second floor of a house. Additionally, three people were standing across the street near a church, children were playing outside, and a woman was sitting on a nearby porch.

Appellant instructed Boxley to proceed around the corner and approach the victim first because the victim would not recognize him. As Boxley walked toward the victim, Boxley's gun accidentally discharged in his back pants pocket. Boxley then ran toward the victim, firing his gun. The victim did not draw a weapon. Appellant, who had been following a few steps behind Boxley during the incident, fired two shots in the victim's direction over the heads of the children playing in the street. The victim ran up onto a porch and entered the building. In response, Boxley fired his gun into the vestibule of the building that the victim had entered, killing him.

Following the shooting, Appellant returned to LaDonna Johnson's house with Melendez and Boxley, and directed Melendez to hide the firearms. Tamika Johnson was also present at LaDonna's house and observed the three men celebrating. Appellant told Tamika to go to the crime scene and determine whether the victim had died. When she returned and reported that the victim was dead, Appellant and Melendez remained celebratory, while Boxley appeared frightened. Melendez then left for his mother's house to hide the murder weapons, which were later recovered by police. Appellant was subsequently arrested in New York City for the shooting. He provided statements to New York City police officers, and later to Reading police officers, indicating, *inter alia*, that he had followed the victim on the street and fired two shots at him from his 9 millimeter revolver.

At Appellant's trial, the Commonwealth presented the testimony of Melendez, who described the events leading up to the murder, as well as the actual shooting of the victim. Melen-

dez acknowledged that he currently had charges pending against him as an accomplice to the murder of the victim, and could possibly face the death penalty. He stated that the Commonwealth did not make any promises or agreements in exchange for his testimony against Appellant, although he hoped for leniency in return for his cooperation. Tamika Johnson testified that, on the day of the murder, she saw Appellant in possession of a firearm, heard him state that the victim had 48 hours to live because he had robbed Lane, and observed Appellant celebrating after the murder. The Commonwealth also presented the testimony of a ballistics expert, who opined that the bullet fragments and shell casings recovered from the crime scene matched the 9 millimeter revolvers recovered by police. In addition, the Commonwealth introduced into evidence the statements Appellant gave to police officers from New York City and Reading.

In his own defense, Appellant testified that he was afraid of the victim because several people had told him that the victim wanted to kill him, and because the victim had fired shots at him during an incident approximately two to three weeks before the murder. Notes of Testimony ("N.T."), Feb. 18, 1999, at 345, 356–57. Appellant conceded that, on the day of the murder, he followed the victim down the street and told Boxley to approach the victim because Appellant wanted to speak with him, but not shoot him. *Id.* at 348–49. Appellant testified that after he heard a gun discharge, he saw the victim reach for something, and then Appellant fired two shots over the victim's head to scare him. *Id.* at 350. He acknowledged that the victim was not carrying a weapon and did not threaten him on the day of the murder. *Id.*, at 379, 372. Appellant further conceded that he could have avoided the victim, but chose to follow him. *Id.* at 375.

Following the jury trial, Appellant was convicted of first degree murder, conspiracy to commit first degree murder, reckless endangerment, and related offenses.[3] At the penalty hearing, he pursued three mitigating circumstances: (1) the

3. Boxley was tried separately, and was convicted of first degree murder.

age of the defendant at the time of the crime; 42 Pa.C.S. § 9711(e)(4); (2) the defendant's participation in the homicidal act was relatively minor; *id.* § 9711(e)(7); and, (3) any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense. *Id.* § 9711(e)(8). Nevertheless, the jury found no mitigating circumstances and one aggravating circumstance, that Appellant knowingly created a grave risk of death to another person in addition to the victim of the offense. *Id.* § 9711(d)(7). Accordingly, on February 19, 1999, the jury rendered a verdict of death. The trial court imposed the sentence of death on March 22, 1999.

Trial counsel thereafter withdrew from the case, and new counsel filed Appellant's post-verdict motions, alleging, *inter alia,* several counts of trial counsel ineffectiveness.[4] Following an evidentiary hearing, the trial court denied post-verdict motions on December 22, 1999. Appellant's direct appeal followed, in which he reiterated his claims of ineffective assistance of trial counsel. This Court affirmed Appellant's judgment of sentence on December 19, 2002. *Busanet, supra.* The United States Supreme Court denied *certiorari* on October 6, 2003. *Busanet v. Pennsylvania,* 540 U.S. 869, 124 S.Ct. 192, 157 L.Ed.2d 126 (2003).

Appellant filed his PCRA petition on September 24, 2004,[5] and amended such petition on December 14, 2004. As de-

4. In 1999, when Appellant's post-verdict motions were filed, defendants were required to raise claims challenging the effectiveness of trial counsel at the earliest stage where counsel whose ineffectiveness was questioned no longer represented the defendant. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977). Shortly after Appellant's direct appeal was decided, however, this Court abrogated the *Hubbard* rule, and held that a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738 (2002). As Appellant's post-verdict motions and direct appeal predated our holding in *Grant,* the *Hubbard* rule governs his appeal. Thus, to be cognizable under the PCRA, any unpreserved claims of ineffectiveness of trial counsel must be couched in terms of appellate counsel ineffectiveness for failing to raise the issue on appeal.

5. Appellant captioned the filing as a "Petition for Habeas Corpus Relief Under Article I, Section 14 of the Pennsylvania Constitution and for

scribed infra at 52–53, upon Appellant's motion, the PCRA court judge, who had presided over Appellant's trial, recused himself from the PCRA proceeding based on general comments the judge had made in an unrelated case, which referenced his frustration with cases involving drug dealing and gun violence in the City of Reading. A new PCRA court judge was thereafter assigned to the case.

During the next few years, several different counsel withdrew their appearance due to conflicts of interest. Appellant filed amendments to his PCRA petition on September 14, 2007, and January 7, 2009.[6] Thereafter, he requested judicial immunity for witness Melendez to testify at the evidentiary hearing, which the PCRA court denied. The PCRA court ultimately conducted evidentiary hearings on October 27–28, 2009, January 25, 2010, and April 9, 13, and 14, 2010. As explained in detail infra, on February 7, 2011, the PCRA court entered an Order and Opinion, examining thoroughly each of Appellant's several claims, and denying PCRA relief.

In his direct appeal from the denial of PCRA relief, Appellant now raises thirteen issues. Our standard of review is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 886 (2010). Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding. *Id.*

To be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances set forth at 42 Pa.C.S. § 9543(a)(2) (including the ineffective assistance of counsel and the unavailability at the time of trial of exculpatory evidence, which would have

Statutory Post–Conviction Relief Under the Post Conviction Relief Act and Consolidated Memorandum of Law."

6. The Commonwealth does not allege that Appellant raised new claims in any of the amendments to his PCRA petition.

18

changed the outcome of the trial had it been introduced). Additionally, the petitioner must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. *Id.* § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Id.* § 9544(a)(2). A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." *Id.* § 9544(b).

Most of Appellant's claims challenge the stewardship of prior counsel. It is well-settled that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has described the *Strickland* standard as tripartite by dividing the performance element into two distinct components. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). Accordingly, to prove trial counsel ineffective, the petitioner must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.

With regard to the reasonable basis prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that the alternative strategy not selected offered a potential for success substantially greater than the course actually pursued. *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012). To establish the prejudice prong, the petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. *Id.*

■■■■■ To prevail on a claim of appellate counsel ineffectiveness for failure to raise an allegation of trial counsel ineffectiveness on direct appeal, a PCRA petitioner must present a "layered"[7] claim by presenting argument as to each of the three prongs of the *Pierce* test for each layer of allegedly ineffective representation. *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 443 (2011). To demonstrate the arguable merit prong of a derivative claim of appellate counsel ineffectiveness, the petitioner must prove that trial counsel was ineffective under the three-prong *Pierce* standard. *Paddy*, 15 A.3d at 443. If the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, petitioner's derivative claim of appellate counsel ineffectiveness fails. *Id.*

## I. *Brady* Claim

■■■■ Appellant argues that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the total benefits Wilson Melendez received in exchange for his testimony against Appellant. As noted, Melendez was the key Commonwealth witness because he was an eyewitness to the murder and implicated Appellant in the crime. Appellant acknowledges that the jury was aware Melendez had murder charges pending against him in connection with the shooting of the victim, and that Melendez hoped for leniency in return for his testimony against Appellant. N.T., Feb. 17, 1999, at 83–84, 87. He argues, however, that the Commonwealth suppressed evidence that it had agreed to drop Melendez's charges of first and second degree murder in exchange for his testimony. Appellant maintains that a promise to exercise prosecutorial discretion in such manner would eliminate the possibility that Melendez would be sentenced to life imprisonment or death, and was sufficient to constitute the *quid pro quo* for an agreement, regardless of the fact that there was no specific understanding as to what charge Melendez would plead to or what particular

7. The "layering" of an ineffectiveness claim refers to how a petitioner presents *seriatim* claims challenging the effectiveness of counsel at sequential stages of criminal litigation. *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1137–38 n. 10 (2009).

sentence he would receive. *See Commonwealth v. Strong*, 563 Pa. 455, 761 A.2d 1167, 1171 (2000) (providing that "[a]ny implication, promise or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility"). Had the jury been aware that a deal existed, Appellant submits, it may have rejected Melendez's testimony as a mere attempt to reduce the sentence he potentially faced in his own prosecution. Appellant concludes that Melendez's trial testimony denying the existence of a deal was false, and that the Commonwealth's failure to correct such testimony constituted prosecutorial misconduct that violated his due process rights and requires a new trial.

In support of this contention, Appellant relies on a December 5, 2008, declaration made by Melendez, which was admitted into evidence at the PCRA hearing.[8] In the declaration, Melendez stated that "the investigators and the D.A. made it clear that if I testified to the events laid out in my June 1997 statement, they would drop the death penalty and I would get a lighter sentence." Appellant also relies on letters Melendez purportedly wrote to his attorney, expressing a similar sentiment. Finally, Appellant relies on the PCRA hearing testimony of Melendez's counsel, Attorney P. David Maynard, who stated that he expected that Melendez would plead guilty to a lesser offense and be sentenced to incarceration for a term of years if he cooperated with the prosecution of Appellant.

Distinct from the *Brady* claim alleging prosecutorial misconduct for suppressing the deal between Melendez and the Commonwealth, Appellant alternatively argues that trial counsel was ineffective for failing to investigate whether a deal existed, and for failing to use such agreement to impeach Melendez's trial testimony. Further, Appellant submits that

8. Melendez did not testify at Appellant's PCRA evidentiary hearing, and, instead, invoked his Fifth Amendment right against self-incrimination. Appellant speculates this occurred because the Commonwealth warned Melendez that he could face perjury charges if he provided testimony at the PCRA evidentiary hearing that was inconsistent with the testimony he gave at Appellant's trial.

appellate counsel was ineffective for failing to challenge on direct appeal trial counsel's stewardship in this regard.

In response, the Commonwealth agrees that any understanding or agreement for leniency between the prosecution and a witness must be revealed to the jury, but submits that there was no undisclosed agreement between the Commonwealth and Melendez. Contrary to Appellant's contentions, it asserts that Attorney Maynard testified at the PCRA hearing that the prosecutor refused to discuss which charges would be dropped, which charges Melendez would plead to, or which sentence Melendez would receive in exchange for his cooperation. N.T., Apr. 14, 2010, at 6–7, 23, 38–39.

Relying on *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403 (2003), the Commonwealth submits that a witness's assumption that the prosecutor promised lenient treatment in exchange for his testimony against another is insufficient to establish that an agreement existed, especially where the individuals who allegedly struck the deal specifically denied under oath that one was made. Thus, the Commonwealth submits, the expectations of Melendez or his counsel, without more, are insufficient to establish that an agreement was reached. This is particularly true, it maintains, because Attorney Maynard clearly testified that his expectation that Melendez would benefit from his cooperation was not based on any representation by the prosecutor, but rather was based on his prior experience with the Berks County District Attorney's Office. N.T., Apr. 14, 2010, at 7.

The Commonwealth further argues that Appellant's declaration, which suggests that particular charges would be dropped in exchange for Melendez's testimony, is not credible given that it is an unreliable recantation of Melendez's trial testimony that no deal existed. *See Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802, 807 n. 4 (1985) (providing that recantation evidence has often been recognized as one of the least reliable forms of after-discovered evidence). The Commonwealth concludes that the *Brady* claim lacks merit because the allegedly suppressed evidence, *i.e.*, the undisclosed deal between the Commonwealth and Melendez, simply does not

exist. Thus, it submits, any claims alleging the ineffective assistance of trial or appellate counsel for not pursuing the issue likewise fail.

The PCRA court agreed with the Commonwealth and rejected Appellant's *Brady* claim, finding that he failed to prove that an undisclosed agreement existed. It relied on Melendez's testimony at Appellant's trial that no deal had been made in exchange for his testimony, as well as Attorney Maynard's PCRA hearing testimony that there had been no agreement, express or implied, between Melendez and the Commonwealth. The PCRA court discounted Appellant's reliance on self-serving letters Melendez purportedly wrote to Attorney Maynard, finding that they did not establish that an agreement existed. Further, it rejected as incredible Melendez's declaration, which alleged that the prosecutor promised to drop certain charges in exchange for his testimony. Even assuming that an alleged undisclosed deal existed and was suppressed by the Commonwealth, the PCRA court held that no prejudice resulted because the jury was aware of Melendez's motive to testify falsely against Appellant to obtain leniency in his own prosecution. For all of these reasons, the PCRA court found that prior counsel could not be deemed ineffective for failing to pursue claims relating to a purportedly undisclosed deal between Melendez and the Commonwealth.

Upon careful review, we find that the PCRA court's factual findings are supported by the record and its conclusions of law are free from legal error. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.,* 373 U.S. at 87, 83 S.Ct. 1194. This Court has held that "[t]o prove a *Brady* violation, the defendant must show that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." *Commonwealth v. Pagan,* 597 Pa.

69, 950 A.2d 270, 291 (2008) (citing *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 245 (2006)).

Because the record supports the factual finding that no undisclosed agreement existed, Appellant has failed to demonstrate that any exculpatory or impeaching evidence was suppressed by the Commonwealth. Attorney Maynard's testimony that he had absolutely no discussions with the prosecutor regarding what Melendez would receive in return for his cooperation in Appellant's prosecution directly refuted Appellant's allegations that the prosecutor promised to drop certain charges against Melendez in exchange for his testimony. The PCRA court credited Attorney Maynard's testimony and found that no agreement had been reached. We decline to disturb that factual finding as it is supported by the record. *See Commonwealth v. Koehler*, 36 A.3d at 135 (affirming the denial of collateral relief where the PCRA court rejected a *Brady* claim based on the factual finding that no undisclosed deal existed between the Commonwealth witness and the prosecutor, and such factual finding was supported by the record).

Moreover, we reject Appellant's argument that an agreement was formed merely because Melendez and his counsel expected the prosecutor to drop certain charges if Melendez cooperated. The record demonstrates that such expectations were not based upon any representations made by the prosecutor. N.T., Apr. 14, 2010, at 7. As the Commonwealth cogently noted, this Court held in *Champney* that a witness's assumption that he will benefit from cooperating in the prosecution of the defendant, without more, is insufficient to establish that an agreement existed, and does not trigger *Brady* disclosure requirements. *Champney*, 832 A.2d at 412. Accordingly, because there was no exculpatory or impeaching evidence that the Commonwealth had an obligation to disclose under *Brady*, Appellant is not entitled to collateral relief on this claim. Moreover, trial counsel was not ineffective for failing to discover the non-existent agreement between Melendez and the Commonwealth, and appellate counsel was not ineffective for failing to preserve this issue on appeal.

## II. Failure to Investigate and Present Evidence of Victim's Violent Character

Appellant argues that trial counsel was ineffective for failing to investigate and present evidence of the victim's violent character, and that appellate counsel was ineffective for failing to preserve this issue on appeal. He asserts that such evidence could have been presented during the guilt phase of trial to discredit Melendez's testimony that Appellant shot the victim in retribution for the victim's robbery of Lane, and thereby corroborate Appellant's testimony that he fired shots at the victim solely because he feared him. Specifically, Appellant maintains that had trial counsel called Lane as a witness, Lane would have testified that the victim never robbed him, which, according to Appellant, would have eliminated the Commonwealth's motive, and suggested that Appellant shot the victim out of fear.[9] He additionally argues that evidence of the victim's violent character could have been presented through the testimony of Aloisa Rodriguez, who would have testified that Appellant was afraid of the victim and believed his life was in danger. He asserts that he was precluded from presenting Rodriguez's testimony because the trial court denied his request for a continuance. Appellant further suggests that trial counsel should have requested a jury instruction as to the relevance of the evidence of the victim's violent character.

Without elaboration, Appellant additionally asserts that trial counsel was ineffective for failing to present evidence of the victim's previous criminal record and violent character during the penalty phase of trial to support the catchall mitigating circumstance, 42 Pa.C.S. § 9711(e)(8), and the mitigating circumstance of evidence that the defendant was under the

9. The PCRA court held that Lane's testimony that he was never robbed would not have eliminated the Commonwealth's motive for the victim's murder. It reasoned that whether the victim actually robbed Lane was irrelevant as the salient fact was that Melendez told Appellant that the victim robbed Lane, and that information, regardless of its truth, served as the impetus for the murder. *See* PCRA Court Opinion, Feb. 7, 2011, at 23.

influence of extreme mental or emotional disturbance. *Id.* § 9711(e)(2).

The Commonwealth responds that evidence of the victim's violent character is only admissible if the defendant offered evidence that the victim was the first aggressor, *i.e.*, that the defendant acted defendant in self-defense. *See Commonwealth v. Dillon,* 528 Pa. 417, 598 A.2d 963, 964–65 (1991) (providing that character evidence of the decedent is admissible to prove the decedent's violent propensities where self-defense is asserted and where there is an issue as to the identity of the aggressor); *see also* Pa.R.E. 404(a)(2)(ii) (providing that, "[i]n a homicide case, where the accused has offered evidence that the deceased was the first aggressor, evidence of a character trait of the deceased for peacefulness is admissible when offered by the prosecution to rebut the same").

Here, the Commonwealth maintains, the evidence indisputably establishes that Appellant was the initial aggressor as he followed the unarmed victim down the street in broad daylight, and fired shots at the victim after declaring his intent to kill him. The victim's previous threats or violent acts cannot justify Appellant's shooting of the victim as self-defense, it submits, because the record is devoid of evidence of any altercation immediately preceding the murder, which would have justified the use of deadly force. *See* 18 Pa.C.S. § 505.[10] In fact, the Commonwealth contends, the record indisputably establishes that the victim posed no immediate threat of physical harm, and that Appellant violated his duty to retreat by pursuing the victim on the street. Thus, the Common-

10. Section 505 of the Crimes Codes provides that the use of force is justifiable "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Subsection (b) states that force is not justifiable "unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat," nor is it justifiable if "the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter;" or "knows that he can avoid the necessity of using such force with complete safety by retreating...." 18 Pa.C.S. § 505(b)(2).

wealth concludes, there is no arguable merit to the underlying claim that trial counsel was ineffective for failing to investigate and present evidence of the victim's violent character.

Moreover, the Commonwealth asserts, Appellant could not have been prejudiced by trial counsel's failure to investigate and present the proffered evidence of the victim's violent character. It submits that the jury was already aware of the victim's violent nature, as Appellant, himself, testified that the victim was a dangerous man who had fired shots at him during an incident approximately two to three weeks before the murder, and that several people had told Appellant that the victim wanted to kill him. N.T., Feb. 18, 1999, at 356–57.

Finally, the Commonwealth refutes Appellant's claim that counsel was ineffective for failing to present the aforementioned evidence of the victim's violent character and criminal record during the penalty hearing. It contends that such evidence does not fall under 42 Pa.C.S. § 9711(e)(8)'s "catch-all" mitigating circumstance because it does not involve the "character and record of the defendant" or the "circumstances of his offense." *Id.* Thus, the Commonwealth concludes, there is no arguable merit to the underlying claim that trial counsel was ineffective for failing to present it, and appellate counsel cannot be deemed ineffective for failing to raise the issue on appeal.

The PCRA court agreed with the Commonwealth, finding that the proffered evidence of the victim's violent character would have been inadmissible at trial because Appellant's own testimony established that he was the aggressor, as he secretly pursued the unarmed victim for several blocks. Even assuming the testimony of Lane and Rodriguez was admissible to establish the victim's character and reputation for violence, the PCRA court held that Appellant was not prejudiced by counsel's failure to present the same because the jury was already aware of the victim's violent nature via Appellant's testimony. The PCRA court further concluded that trial counsel could not be deemed ineffective for failing to request a jury charge regarding evidence of the victim's violent character when the trial court had ruled that Appellant was not

entitled to a jury instruction on justification. Accordingly, it held that there was no arguable merit to the claim of trial counsel ineffectiveness, and appellate counsel could not be deemed ineffective for failing to raise a meritless claim on appeal.

Additionally, the PCRA court held that trial counsel was not ineffective during the penalty phase for failing to present the aforementioned evidence of the victim's violent character in support of the catchall mitigating factor of 42 Pa.C.S. § 9711(e)(8) (encompassing any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense). Relying on the statutory language, the court held that such evidence was neither relevant to the character of Appellant, nor germane to the factual circumstances of the shooting. Alternatively, the PCRA court held that Appellant was not prejudiced because, as noted, other evidence established the victim's violent nature and trial counsel urged the jury in his penalty phase closing argument to consider such evidence as support for the catchall mitigating circumstance. N.T., Feb. 19, 1999, at 546 (where trial counsel urged the jury to consider as evidence of the catchall mitigating circumstance that "[t]he person who was killed was obviously a drug dealer, clearly a very violent and dangerous person").

Finally, the PCRA court ruled that the proffered evidence of the victim's violent character would not have supported the Section 9711(e)(3) mitigating circumstance, i.e., that the defendant was acting under the influence of extreme mental or emotional disturbance, because the evidence revealed that Appellant purposefully gathered his cohorts and led them in a pursuit of the victim. Under these circumstances, the PCRA court held that trial counsel cannot be deemed ineffective for failing to investigate and present evidence of the victim's violent character, and the derivative claim of appellate counsel ineffectiveness fails.

Upon review, we conclude that the PCRA court's findings of fact are supported by the record, and its legal conclusions are free of error. This Court has permitted the introduction of

character evidence to prove the victim's violent propensities where self-defense is asserted, and where there is a factual issue as to who was the aggressor. *Dillon,* 598 A.2d at 965 (citing *Alexander v. Commonwealth,* 105 Pa. 1, 9 (1884)). Pursuant to Section 505 of the Crimes Code, self-defense is established and the use of force is justifiable "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Significantly, the use of deadly force, however, is not justifiable if the actor provoked the use of force against him or could have avoided the necessity of using force by retreating. *Id.* § 505(b).

 Here, rather than support a theory of self-defense, Appellant's trial testimony refuted it. Specifically, he testified that on the day of the murder, the victim was not carrying a weapon, and did not threaten him in any way. N.T., Feb. 18, 1999, at 379, 372. Further, Appellant conceded that he could have avoided the whole encounter, but instead pursued the victim by following him down the street, and firing two shots in his direction. *Id.* at 375, 349–50. Considering this evidentiary record, the PCRA court was correct in concluding that evidence of the victim's violent character would not have been admissible at Appellant's trial. Thus, trial counsel was not ineffective for failing to investigate and present the same, and appellate counsel was not ineffective for failing to pursue the issue on appeal.

 Likewise, the claim that trial counsel was ineffective for failing to request an instruction as to the relevance of the victim's violent character lacks arguable merit because such charge was unwarranted, as the trial court indicated it would not instruct the jury on self-defense. *See* N.T., Feb. 18, 1999, 393 (where the trial court stated, "[a]nd in any event, gentlemen, I'm not going to give justification instructions. I know you are surprised. But you're not going to get it based on [Appellant's] testimony"); *see also Commonwealth v. Hanible,* 612 Pa. 183, 30 A.3d 426, 462 (2011) (holding that claim

alleging trial counsel ineffectiveness for failing to request a particular jury charge lacks arguable merit where the defendant was not legally entitled to such charge).

To the extent Appellant has developed adequately an independent claim that trial counsel was ineffective for failing to investigate and present evidence of the victim's violent character during the penalty phase, we also reject that claim. We agree with the PCRA court that Appellant could not have been prejudiced by trial counsel's failure to investigate and present evidence of the victim's violent character because the jury was already aware of the victim's violent tendencies and trial counsel urged the jury in closing argument to consider the victim's dangerousness and drug dealing as evidence of the catchall mitigating circumstance. N.T., Feb. 19, 1999, at 546 (where trial counsel urged the jury to consider as evidence of the catchall mitigating circumstance that "[t]he person who was killed was obviously a drug dealer, clearly a very violent and dangerous person").

Finally, we conclude that trial counsel was not ineffective for failing to investigate and present evidence of the victim's violent character during the penalty phase to support the aggravating circumstance of the Section 9711(e)(3) mitigating circumstance, i.e., that the defendant was acting under the influence of extreme mental or emotional disturbance. This claim lacks arguable merit because Appellant fails to identify how the violent character of the victim suggests that Appellant suffered from a mental or emotional disturbance, and the same is not obvious from the record. Thus, trial counsel was not ineffective for failing to investigate and present evidence of the victim's violent character or criminal record during the penalty phase, and appellate counsel was not ineffective for failing to pursue the issue on appeal.

### III. Failure to Present Evidence of Appellant's Mental Health at Trial

Appellant argues that trial counsel was ineffective for failing to investigate and present evidence of his mental

health history to lessen his culpability from first degree murder to voluntary manslaughter under the distinct theories of heat of passion and imperfect self-defense, and that appellate counsel was ineffective for failing to pursue this issue on appeal.[11]

In support of this claim, Appellant's father testified at the PCRA evidentiary hearing that Appellant displayed emotional problems as a child and that some of his relatives struggled with mental illness, including Appellant's mother who had attempted to commit suicide. N.T., Apr. 9, 2010, at 34–36. Further, Appellant's former social worker testified that Appellant had received in-patient psychiatric treatment when he was 8 years old, N.T., Jan. 25, 2010, at 67–68, and his former counselor testified that Appellant had been raised in a toxic environment where he experienced physical, verbal, and mental abuse. N.T., Apr. 9, 2010, at 9–10. Additionally, mental health experts opined that Appellant exhibited symptoms of, *inter alia,* brain damage, bipolar disorder with psychotic features, post traumatic stress disorder, dementia due to head trauma, learning disorder, and borderline intellectual functioning. N.T., Jan. 25, 2010, at 136, 127, 130, 133–34, respectively.

To demonstrate the arguable merit of the heat of passion component of the layered ineffectiveness claim, Appellant contends that the proffered evidence of his mental health history would have established that he shot the victim under the heat of passion, and, thus, he was only culpable for voluntary manslaughter, and not first degree murder. *See* 18 Pa.C.S. § 2503(a)(1) (providing that a "person who kills an individual without lawful justification commits voluntary man-

11. The Pennsylvania Crimes Code provides for a conviction of voluntary manslaughter under the following two circumstances: (1) where the defendant acted under a sudden and intense passion resulting from a serious provocation; or, alternatively, (2) where the defendant knowingly and intentionally killed an individual under the unreasonable belief that the killing was justified. 18 Pa.C.S. § 2503(a), (b). The latter definition of unreasonable belief voluntary manslaughter has been colloquially referred to as "imperfect self-defense." *Commonwealth v. Rivera,* 603 Pa. 340, 983 A.2d 1211, 1223 (2009). Unlike the affirmative defense of self-defense, which is a justification for the crime and, if accepted, results in acquittal, a finding of imperfect self-defense results in conviction of the offense of voluntary manslaughter. *Id.*

slaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by ... the individual killed"). He suggests that the omitted evidence would have demonstrated that his "passion" had its origins in his mental disorders. *See Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286, 289–90 (1972) (holding that psychiatric evidence was admissible for the purpose of determining whether the defendant acted in the heat of passion where there was evidence of provocation for the murder of his wife, i.e., that within minutes of the crime, the defendant learned that his wife was leaving him and was pregnant with his stepbrother's child).

Appellant further maintains that the provocation necessary for a heat of passion claim was established by the victim's threats against his life in the weeks preceding the murder, and the stress Appellant experienced when the gun of his codefendant accidentally discharged. In his view, the fact that he armed himself before he confronted the victim on the street "is an expression of the intense fear and anxiety he felt leading up to the shooting, rather than an act of premeditation as argued by the prosecutor." Brief of Appellant at 48. According to Appellant, the fact that the victim had not issued a threat to him on the day of the murder "is of little consequence." *Id.*

Alternatively, Appellant contends that the proffered evidence of his mental health impairments would have established that he shot the victim because he mistakenly believed that the victim had fired shots at him, thereby reducing his criminal liability from first degree murder to imperfect self-defense voluntary manslaughter. *See* 18 Pa.C.S. § 2503(b) (providing that "[a] person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable"); *see also Rivera*, 983 A.2d at 1225 (holding that an imperfect self-defense claim is imperfect in only one respect-an unreasonable rather than reasonable be-

lief that deadly force was required to save the actor's life; all
other requirements for justification under 18 Pa.C.S. § 505
must be satisfied).

The Commonwealth responds that Appellant's layered inef-
fectiveness claim fails for lack of arguable merit because the
proffered mental health history, even if believed, does not
support the theory that his first degree murder conviction
could have been reduced to either heat of passion or imperfect
self-defense voluntary manslaughter. It contends the under-
lying heat of passion voluntary manslaughter claim lacks merit
because the record does not establish that Appellant acted
under a sudden and intense passion at the time of the killing
due to serious provocation from the victim, but rather demon-
strates that Appellant had a premeditated plan to pursue and
kill the victim. Moreover, the heat of passion claim fails, the
Commonwealth submits, where the defendant had sufficient
time to "cool off" between the time of the provocation and the
time of the killing. It maintains that, here, Appellant's own
testimony established that the victim's previous threats and
acts of violence occurred several weeks before the instant
murder, N.T., Feb. 18, 1999, at 356–357, and, thus, Appellant
had a sufficient time to "cool off" and regain his composure.

Germane to the imperfect self-defense component of the
layered ineffectiveness claim, the Commonwealth relies on its
argument in Issue II, and reiterates that Appellant's own trial
testimony refutes a claim of self-defense, and necessarily,
refutes a claim of imperfect self-defense. It asserts that to
establish imperfect self-defense, a defendant must demon-
strate that he acted in self-defense by satisfying the statutory
requirements for justification, while acknowledging that his
belief that his life was in danger was unreasonable. The
Commonwealth maintains that Appellant cannot overcome
such burden as his own testimony demonstrates that he
pursued the unarmed victim who had not posed any physical
threat to him on the day of the murder. Thus, it contends
that because Appellant violated his duty to retreat and acted
as the initial aggressor, he could not have asserted a claim of

imperfect self-defense, regardless of whether he mistakenly believed his life was in danger.

Under such circumstances, the Commonwealth concludes, introduction of evidence of Appellant's mental health history would not have supported a claim of heat of passion or imperfect self-defense voluntary manslaughter, and trial counsel cannot be deemed ineffective for failing to present the same. For this same reason, it maintains that the derivative claim alleging appellate counsel ineffectiveness, which is the only cognizable claim under the PCRA, also fails.

The PCRA court agreed, rejecting Appellant's layered ineffectiveness claim for lack of arguable merit. Relating to the heat of passion component, it held that even if the proffered evidence of Appellant's mental health history had been introduced at trial, the evidence failed to establish that Appellant acted under a sudden and intense passion resulting from serious provocation from the victim. The court held that the victim's threats against Appellant were made weeks prior to the shooting and were too remote to establish serious provocation. It further emphasized that, on the day of the murder, it was Appellant who made the decision to seek out the victim. Thus, the PCRA court concluded that Appellant's shooting of the victim was not the result of serious provocation from the victim, and trial counsel was not ineffective for failing to investigate and present mental health evidence in support of a claim of heat of passion voluntary manslaughter. On this same basis, the court likewise rejected the derivative claim of appellate counsel ineffectiveness.

Finally, the PCRA court echoed the Commonwealth's argument and held that the imperfect self-defense component of the ineffectiveness claim failed because, to establish a justification defense, a defendant must not only show that he was protecting himself against the unlawful use of force, but also that he was free from fault in provoking or continuing the difficulty which led to the killing. The court opined that Appellant was not free from fault in provoking or continuing the conduct which led to the killing and did not comply with his duty to retreat. It emphasized that the victim had not

made any threats to Appellant on the day of the murder, and nothing in the record suggested that Appellant was precluded from avoiding or terminating the encounter altogether. Thus, the court held that even if the omitted evidence of Appellant's mental health history demonstrated that he had an unreasonable, but bona fide belief that his life was in danger when he shot at the victim, there was no evidence to support the remaining factors required for establishing a justification defense. Accordingly, it held that trial counsel was not ineffective for failing to investigate and present evidence of Appellant's mental health to support a claim of imperfect self-defense, and appellate counsel was not ineffective for failing to raise the issue on appeal.

The PCRA court's factual findings are supported by the record and its legal conclusions are free from error. Relevant to the heat of passion claim, we note that a defendant charged with murder may establish that he is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he was acting under a sudden and intense passion resulting from serious provocation by the victim. *Commonwealth v. Miller*, 605 Pa. 1, 987 A.2d 638, 649 (2009); 18 Pa.C.S. § 2503(a). "Emotions encompassed by the term 'passion' include anger, rage, sudden resentment or terror which renders the mind incapable of reason." *Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 314 (2011) (citing *Miller*, 987 A.2d at 650). "Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable man who was confronted with the provoking events would become 'impassioned to the extent that his mind was incapable of cool reflection.'" *Id.* at 314–15. Significantly, we have clarified that both passion and provocation must be established, and that "if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder." *Hutchinson*, 25 A.3d at 315 (quoting *Commonwealth v. Barnosky*, 436 Pa. 59, 258 A.2d 512, 515 (1969)).

Here, even if Appellant's proffered evidence of mental health impairment was believed and accepted as evidence of "passion," the PCRA court was correct in ruling that there was no evidence of provocation. Rather, the record supports the PCRA court's finding that the victim's threats against Appellant were made weeks prior to the shooting, thereby affording Appellant sufficient time to engage in cool reflection. The record further supports the PCRA court's conclusion that, on the day of the murder, Appellant retrieved his firearm, gathered his cohorts, and followed the unarmed victim down the street, after declaring his intent to kill him. Under these circumstances the shooting was not the result of serious provocation from the victim, and Appellant's culpability for first degree murder could not have been reduced to voluntary manslaughter. *See Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317, 325 (1996) (holding that a shooting was not the result of serious provocation from the victim when the defendant began firing at unarmed men standing on a street corner). Accordingly, trial counsel was not ineffective for failing to investigate and present evidence to support a heat of passion claim, and appellate counsel was not ineffective for failing to raise this meritless claim on appeal.

■■ Appellant's challenge to counsel's failure to investigate and present evidence of his mental health history in support of a claim of imperfect self-defense likewise fails for lack of arguable merit. As recognized by the Commonwealth and the PCRA court, "a claim of imperfect self-defense must satisfy all the requisites of justifiable self-defense (including that the defendant was not the aggressor and did not violate a duty to retreat safely), with the exception that imperfect self-defense involves an *unreasonable,* rather than a reasonable, belief that deadly force was required to save the actor's life." *Rivera*, 983 A.2d at 1224 (emphasis in original); 18 Pa.C.S. § 505(b). We have already established that Appellant has failed to satisfy this burden as he initiated the encounter with the victim and acknowledged that he could have avoided the whole incident by safely retreating. Thus, even if the proffered evidence of Appellant's mental health impairments were

accepted as evidence of Appellant's mistaken belief that his life was in danger when he shot at the victim, there is no evidence to support the remaining factors required for establishing a claim of imperfect self-defense. Under these circumstances, trial counsel was not ineffective for failing to investigate and present evidence to support a claim of imperfect self-defense, and the derivative claim of appellate counsel ineffectiveness fails.

## IV. Failure to Seek Suppression of Appellant's Statement

■■■ Appellant argues that trial counsel was ineffective for failing to seek suppression of a statement he gave to a Reading police officer in an "informal" interview prior to having received *Miranda* [12] warnings, and that appellate counsel was ineffective for failing to preserve this issue on appeal. The factual predicate for this claim is as follows. Shortly before midnight on June 30, 1997, Appellant was arrested in New York. Nearly six hours later, at approximately 5:50 a.m., on July 1, 1997, New York detectives advised Appellant of his *Miranda* warnings. Appellant indicated that he understood those rights and agreed to speak with the officers without an attorney present. Appellant thereafter provided a written statement to New York detectives indicating, *inter alia*, that he had followed the victim on the street and fired two shots in the victim's direction. The interview with New York police officers ended at 7:55 a.m.

In the meantime, Detective Albert Schade from the Reading Police Department arrived in New York, and began speaking with Appellant in the same room approximately fifteen minutes later at 8:10 a.m. Shortly thereafter, Appellant made the statement at issue, telling Detective Schade that he had thought about going to the victim's funeral with a "street sweeper" [13] and "taking out" the victim's whole family (herein-

12. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

13. The PCRA Court indicated that the term "street sweeper" is used in reference to a type of automatic firearm. PCRA Court Opinion, Feb. 7, 2011, at 15 n.14.

after, "street sweeper statement"). Subsequently, at 9:20 a.m., Detective Schade restated the *Miranda* warnings that had already been given by the New York officers earlier that morning, and, after waiving those rights, Appellant gave a second written statement in which he again implicated himself in the murder.

▪ Appellant argues that trial counsel was ineffective for failing to seek suppression of the street sweeper statement because it was made informally prior to when Detective Schade advised him of his *Miranda* warnings. He acknowledges that trial counsel attempted unsuccessfully to suppress the statement on the ground that it was involuntary due to the lengthy detention and interrogation in a hostile environment. Specifically, however, Appellant contends that trial counsel should have sought to suppress the statement on the ground that it violated *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality), which held that where the police intentionally refrain from giving *Miranda* warnings until interrogation has produced a confession, and then elicit a second confession after warnings are given to the accused, the second confession is inadmissible because the interrogation method employed circumvented the constitutional requirements of *Miranda*. He likens the improper interrogation method employed in *Seibert* to the one that occurred here.

Appellant asserts that trial counsel could have no reasonable strategy for failing to seek suppression of the street sweeper statement because he recognized the prejudicial nature of the comment as he sought suppression of the same statement on different grounds. Finally, Appellant maintains that he was prejudiced by trial counsel's failure to seek suppression because the Commonwealth introduced the street sweeper statement at Appellant's trial, which suggested to the jury that Appellant was a "homicidal maniac" who would have sought to murder the victim's entire family. He recognizes that the Commonwealth did not present the street sweeper statement in its case in chief, but rather introduced it as rebuttal evidence when cross-examining Appellant after he testified that he never intended for anyone to be killed. N.T., Feb. 18,

1999, at 348, 352. Notably, Appellant further acknowledges that "[s]uppression would not have necessarily precluded this use [as rebuttal evidence], but suppression may have caused [him] to re-think the decision to testify, so as to avoid the possible use of this evidence." Brief for Appellant at 35 n.4. Nevertheless, Appellant concludes that trial counsel was ineffective for failing to seek suppression of the street sweeper comment on the ground that it violated *Miranda*, and that appellate counsel was ineffective for failing to raise this issue on appeal.

The Commonwealth responds that this claim of ineffective assistance of counsel lacks arguable merit because, unlike in *Seibert*, Appellant was advised of his *Miranda* rights before he made the street sweeper statement and no improper interrogation method was employed. It points out that the New York officers gave Appellant *Miranda* warnings before they questioned him about the instant murder, and that Detective Schade merely continued questioning of Appellant in the same room about the same offense within a period of four hours. Under such circumstances, the Commonwealth submits, a "clear continuity of interrogation" existed and no violation of *Miranda* occurred. *See Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 875 (2000) (holding that *Miranda* warnings need not be given again every time a custodial interrogation is renewed; rather we view the totality of the circumstances to determine whether there has been a clear continuity of interrogation); *Commonwealth v. Bennett*, 445 Pa. 8, 282 A.2d 276, 279 (1971).

Significantly, the Commonwealth argues that the ineffectiveness claim also fails for lack of arguable merit because Appellant's comment—that he had thought about going to the victim's funeral with a "street sweeper" and "taking out" the victim's whole family—even if obtained in violation of *Miranda*, was admissible for the limited purpose of impeaching Appellant's testimony that he never intended for anyone to be killed. The Commonwealth emphasizes that it did not introduce the street sweeper statement in its case in chief, but as proper rebuttal evidence in response to Appellant's asserted

lack of intent to inflict harm. It maintains that the Pennsylvania Constitution expressly permits the admission of suppressed voluntary statements for purposes of impeaching the credibility of a witness. *See* PA. CONST. Art. 1, § 9 (providing that "[t]he use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself"). Thus, the Commonwealth concludes that trial counsel was not ineffective for failing to pursue suppression of the street sweeper statement on the ground that it violated his *Miranda* rights, and appellate counsel was not ineffective for failing to raise this issue on appeal.

The PCRA court agreed with the Commonwealth, and denied relief on the layered ineffectiveness claim. It held that the investigation methods employed were distinguishable from those in *Seibert* because Appellant was advised of his *Miranda* rights and validly waived those rights prior to making the street sweeper statement. Thus, it concluded that the statement was not unlawfully obtained. Moreover, consistent with the Commonwealth's argument, the PCRA court held that the statement was admissible to impeach Appellant's credibility even if a *Miranda* violation had occurred because a voluntary confession that was suppressed on *Miranda* grounds may be used on rebuttal to impeach a defendant's testimony. Thus, the court concluded that trial counsel was not ineffective for failing to seek suppression of the street sweeper statement on the grounds that it violated *Miranda,* and appellate counsel was not ineffective for failing to raise the issue on appeal.

We agree with the PCRA court that Appellant is not entitled to relief on this layered claim of ineffectiveness. The underlying claim, that trial counsel was ineffective for failing to seek suppression of Appellant's street sweeper statement lacks arguable merit for a myriad of reasons. First, Appellant's claim is premised on the United States Supreme Court's decision in *Seibert,* which is distinguishable as it involved a particular interrogation method not involved here, *i.e.,* where police officers intentionally refrained from advising the ac-

cused of his *Miranda* rights until after they elicited a confession. Appellant ignores the salient fact that New York police officers advised Appellant of his *Miranda* rights before he made the challenged street sweeper statement, and does not argue that the questioning by the Reading police detective moments later in the same room constituted a separate interrogation, requiring the reiteration of *Miranda* warnings. Moreover, while faulting trial counsel for failing to rely on the *Seibert* decision as the grounds for pre-trial suppression, Appellant overlooks that such decision did not exist at that time as it was not decided until 2004, more than five years after Appellant's trial.

Additionally, regardless of whether the challenged statement was obtained in violation of *Miranda*, it would not be subject to suppression because it was admitted for the limited purpose of impeaching Appellant's testimony. As noted, after Appellant testified on direct examination that he never intended for anyone to be harmed, the Commonwealth presented as rebuttal evidence Appellant's statement that he had thought about going to the victim's funeral with a "street sweeper" and "taking out" the victim's whole family. This use was constitutionally permissible. *See* PA. CONST. Art. 1, § 9 (providing that "[t]he use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself"); *Commonwealth v. Baxter*, 367 Pa.Super. 342, 532 A.2d 1177, 1178 (1987) (holding that the use of a voluntary confession for impeachment is not a violation of either the Pennsylvania Constitution or the Fifth Amendment to the United States Constitution); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (holding that the prosecution may impeach a testifying criminal defendant with voluntary statements police obtained in violation of *Miranda* ). Appellant appears to concede this point. *See* Brief for Appellant at 35 n.4. (acknowledging that suppression would not have necessarily precluded use of the challenged statement as rebuttal evidence). Accordingly, as the underlying claim of trial counsel ineffectiveness fails for lack of arguable merit,

appellate counsel cannot be deemed ineffective for failing to raise it on appeal.

## V. Prior Bad Acts Evidence

Appellant argues that trial counsel was ineffective for failing to object and request cautionary instructions when the prosecutor elicited improper testimony of his prior bad acts, and that appellate counsel was ineffective for failing to raise this issue on appeal. He cites four comments or exchanges as improper evidence of prior bad acts. First, Appellant cites the prosecutor's reference to the statement discussed in Issue IV, *supra*, that Appellant considered going to the victim's funeral with a "street sweeper" and "taking everybody out." For the reasons set forth in Issue IV, Appellant is not entitled to relief on this sub-issue.

His second reference to alleged prior bad acts evidence involves trial counsel's presentation of Appellant's own testimony that he had been convicted of assault that had occurred while he was imprisoned on Riker's Island. He contends that because the prior assault conviction did not involve dishonesty, the Commonwealth would not have been able to introduce it to impeach his credibility. Thus, Appellant concludes, trial counsel was ineffective for eliciting such evidence. This identical claim was previously litigated on direct appeal and, thus, is not cognizable under the PCRA. *See* 42 Pa.C.S. § 9543(a)(3) (providing that a PCRA petitioner must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived); *see also Busanet*, 817 A.2d at 1068 (rejecting for lack of prejudice the claim that trial counsel was ineffective for introducing Appellant's previous conviction for the assault he committed on Riker's Island).

Appellant's third reference to prior bad acts evidence involves the Commonwealth's presentation of Melendez's testimony that Appellant asked Melendez to sell drugs and also employed a teenager to sell drugs. N.T., Feb. 18, 1999, at 385–86. He argues that while some evidence of drug activity may have been relevant to the prosecution's theory of motive,

there was no probative value in evidence indicating that Appellant sold drugs for a living and hired juveniles to work for him. Fourth, Appellant cites the prosecutor's examination of Detective Schade, which referenced Appellant's prior statement that he "was already running from the law in New York." N.T., Feb. 18, 1999, at 298. He contends that his previous criminal activity in New York had no relevance to the instant case, and was prejudicial. According to Appellant, evidence of these prior bad acts was inadmissible and trial counsel's failure to object to them violated due process because the jury may have concluded that he was a person of bad character who acted in conformity therewith.

Germane to the only sub-issues remaining, the Commonwealth responds that while evidence of prior bad acts is generally inadmissible, there are several exceptions whereby such evidence is admissible for a relevant, legitimate purpose. Here, it contends, Appellant's previous statement that he was "running from the law in New York" was admissible for the purpose of demonstrating his consciousness of guilt. In the Commonwealth's view, the trial court lessened any prejudicial impact resulting from admission of the statement by explaining in its final charge that Appellant may have been running from the law in New York because he was innocent or scared. The Commonwealth concludes that because the evidence of Appellant's prior bad acts was admissible, trial counsel was not ineffective for failing to object, and appellate counsel was not ineffective for failing to pursue the issue on appeal.

The PCRA court denied relief on this claim. It held that evidence of Appellant's drug dealing was admissible because it was relevant to the prosecution's theory of motive, i.e., that Appellant was distraught because the victim, a rival drug dealer, had antagonized one of his associates. The court noted that evidence of Appellant's drug dealing was also relevant to the defense's case, as it provided a context for understanding Appellant's testimony regarding his fear of the victim. Finally, the court pointed out that trial counsel, in fact, objected to the prosecutor's questioning regarding the age of the juvenile

who sold drugs for Appellant, thus, he cannot be deemed ineffective for failing to do so.

Additionally, the PCRA court held that the passing reference to Appellant's statement that he was "running from the law in New York," which was part of a written statement Appellant provided police, was not prejudicial, considering the overwhelming evidence of his guilt. The court found that the prosecutor did not elicit details regarding the nature of any New York crimes or emphasize such offenses later in the trial. For all these reasons, the PCRA court held that trial counsel was not ineffective for failing to object to any evidence of Appellant's prior bad acts, and appellate counsel was not ineffective for failing to raise this issue on appeal.

■ The PCRA court's ruling in this regard is supported by the record and free from legal error. While evidence of prior bad acts is inadmissible to prove the character of a person in order to show conduct in conformity therewith, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. *Commonwealth v. Sherwood,* 603 Pa. 92, 982 A.2d 483, 497 (2009); Pa.R.E. 404(b)(2) (providing that "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident"). Here, the PCRA court did not err by holding that evidence of Appellant's drug dealing was admissible to prove his motive for killing a rival drug dealer for antagonizing one of Appellant's cohorts. Accordingly, trial counsel was not ineffective for failing to object to admissible testimony, and appellate counsel was not ineffective for failing to preserve this issue on appeal. Regarding the specific questioning as to the age of the individual selling drugs for Appellant, trial counsel did, in fact, object, and thus cannot be deemed ineffective for failing to do so.

■ Finally, the PCRA court was correct in ruling that Appellant was not prejudiced by the Commonwealth's intro-

duction of his prior written statement that he was "running from the law in New York." As the PCRA court noted, the prosecutor did not elicit details regarding the nature of any New York crimes or emphasize such offenses later in the trial. Considering the overwhelming evidence of guilt, including the testimony of Wilson Melendez and Tamika Johnson, the ballistics evidence linking Appellant to the shooting, and Appellant's own incriminating statements to police, we do not find that the outcome of the trial would have been different had trial counsel objected to the passing reference that Appellant was "already running from the police in New York." Accordingly, the claim of trial counsel ineffectiveness fails for lack of prejudice, and appellant counsel was not ineffective for failing to raise the issue in his direct appeal.

## VI. Burden of Proof Instruction

Appellant argues that trial counsel was ineffective for failing to object to the trial court's erroneous instruction regarding the Commonwealth's burden of proof, and that appellate counsel was ineffective for failing to raise this issue on appeal. After informing the jury that Appellant is presumed innocent, and that the Commonwealth has the burden of proving every element of the crime charged beyond a reasonable doubt, the trial court stated:

> Any conviction must be based on more than mere suspicion or conjecture. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty.

N.T., Feb. 19, 1999, at 456.

Appellant contends this charge is erroneous because it directs the jury to consider only the Commonwealth's evidence when determining whether it satisfied its burden of proof, and precludes the jury from considering evidence presented by the defense. He submits that trial counsel could have had no reasonable basis for failing to object to an instruction that reduced the Commonwealth's burden of proof. Finally, Ap-

pellant maintains he was prejudiced by trial counsel's failure to object because the trial court's instruction, which ostensibly precluded the jury from considering defense evidence, left him with no defense at all.

The Commonwealth contends that this claim fails for lack of arguable merit because the jury charge given was a correct statement of the law as it informed the jury that the defendant is presumed innocent, and that the Commonwealth has the burden of proving all elements of the crimes charged beyond a reasonable doubt. Contrary to Appellant's contentions, it asserts that it would have been error for the trial court to direct the jury to consider defense evidence when determining whether the Commonwealth satisfied its burden of proof. Accordingly, the Commonwealth concludes that trial counsel was not ineffective for failing to object to a correct jury charge, and appellate counsel was not ineffective for failing to pursue this issue on appeal.

After reviewing the charge as a whole, the PCRA court concluded that the instruction clearly and accurately reflected the law. It held that the charge did not direct the jury to ignore defense evidence, but rather provided that it was the Commonwealth's obligation to present evidence demonstrating that Appellant was guilty beyond a reasonable doubt. As the charge was proper, the PCRA court concluded that trial counsel was not ineffective for failing to object, and appellate counsel was not ineffective for failing to raise the issue on appeal.

The PCRA court's conclusions in this regard are supported by the record and free of legal error. We begin by reiterating that in reviewing a challenge to a jury instruction, the charge must be considered as a whole. *Commonwealth v. Lesko*, 609 Pa. 128, 15 A.3d 345, 397 (2011). The trial court has broad discretion in phrasing the instructions, so long as the directions given clearly, adequately, and accurately reflect the law. *Id.* Here, examining the charge as whole, we find it was not erroneous, as the trial court did not, in any way, direct the jury to disregard defense evidence, nor did it

instruct the jury to consider only the Commonwealth's evidence. Rather, the trial court instructed that a criminal defendant is presumed innocent, and that the Commonwealth has the burden of presenting evidence to prove all elements of the crimes charged beyond a reasonable doubt. This is an accurate statement of the law. *See Commonwealth v. Smith,* 609 Pa. 605, 17 A.3d 873, 908 (2011) (it is well-established that the defendant has no duty to present evidence and may instead rely on the presumption of innocence and the Commonwealth's burden of proof). Because the jury charge was not erroneous, trial counsel was not ineffective for failing to object, and the derivative claim of appellate counsel ineffectiveness fails.

## VII. Failure to Object to Prosecutorial Misconduct

Appellant argues that trial counsel was ineffective for failing to object to improper comments made by the prosecutor in his opening statements and closing argument, and for failing to seek a cure for the prosecutorial misconduct. To render the claim cognizable under the PCRA, he further contends that appellate counsel was ineffective for failing to pursue this issue on appeal.

In an effort to establish the arguable merit of the layered ineffectiveness claim, Appellant first asserts that the prosecutor stated improperly and repeatedly in his opening and closing remarks that Appellant had a "total disregard for the value of human life." N.T., Feb. 17, 1999, at 18, 19, 23; N.T., Feb. 19, 1999, at 440, 442, 533. He maintains that the prosecutor reiterated this theme in his closing argument by stating, "[t]hat is what this case is about, the total disregard for the value of human life and holding someone accountable for what they did." *Id.* at 440. Trial counsel objected the first two times the reference was made in the prosecutor's opening statements, and the trial court sustained counsel's objection. Nevertheless, Appellant argues that trial counsel did not renew his objection when the prosecutor ignored the trial court's ruling and repeated the sentiment, and failed to seek a cautionary instruction or mistrial. Appellant argues

that the prosecutor's reiteration of this theme was inflammatory and designed solely to appeal to the sympathies of the jury. He further maintains that it was an improper expression of the prosecutor's personal opinion, and was an attempt to paint Appellant as a dangerous person of bad character who lacked remorse.

Second, Appellant relies on the prosecutor's comment in the end of his closing argument, that "all too often in the City, throughout Berks County, people are being shot at. But today is the day ... for accountability." *Id.* at 452. Trial counsel objected to this statement, and the trial court sustained the objection, struck the statement from the record, and instructed the jury to disregard it. *Id.* Appellant nevertheless contends that trial counsel was ineffective, presumably for failing to seek a mistrial. He categorizes such reference as an improper appeal to the jury's sense of civic duty and a request that the jury convict Appellant, based not on the evidence, but rather on a desire to "fix" some greater ill in society.

Third, Appellant argues that the prosecutor referred improperly to the defense strategy of attacking the credibility of Commonwealth witnesses Wilson Melendez and Tamika Johnson as "smoke and mirrors designed to distract you from the words and deeds of [Appellant]." *Id.* at 450. He argues that such characterization unfairly denigrated the defense and expressed the prosecutor's personal opinion as to the credibility of the defense testimony. Appellant concludes that the prosecutor's actions so infected the trial with unfairness as to make the resulting conviction a denial of due process. Finally, Appellant makes the global claim that trial counsel could have had no reasonable basis for failing to object or seek a further remedy in relation to the purported instances of prosecutorial misconduct, and that he was prejudiced by the challenged comments as they urged the jury to convict Appellant on an improper basis.

The Commonwealth contends that Appellant's layered ineffectiveness claim fails for lack of arguable merit. First, it

acknowledges that the prosecutor's theme of the case was that Appellant had "total disregard for the value of human life," but maintains that such theme was based on the evidence of record establishing that Appellant fired his gun over the heads of children playing on the sidewalk in broad daylight on a June afternoon. The Commonwealth maintains that such comments constituted a fair characterization of the facts presented at trial.

Second, the Commonwealth addresses the prosecutor's comment that "all too often in the City, throughout Berks County, people are being shot at. But today is the day ... for accountability." *Id.* at 452. It contends that trial counsel cannot be deemed ineffective because he promptly objected and received a cautionary instruction. Further, the Commonwealth submits that any prejudice resulting from such reference was cured when the trial court struck the statement from the record, and advised the jury to disregard it as improper.

Third, the Commonwealth contends that the prosecutor's characterization of Appellant's defense as "smoke and mirrors" was fair comment made in response to Appellant's argument that the incriminating testimony of Commonwealth witnesses Wilson Melendez and Tamika Johnson was incredible. It argues that a prosecutor must be granted reasonable latitude in presenting his or her case to the jury, and must be given the freedom to respond vigorously to defense arguments. Because all of the challenged comments were either legally permissible or stricken from the record, the Commonwealth concludes that trial counsel was not ineffective for failing to take further action, and appellate counsel was not ineffective for failing to pursue this issue on appeal.

After reviewing the entirety of the prosecutor's remarks, the PCRA court held that neither trial counsel nor appellate counsel were ineffective for failing to object or raise claims challenging the prosecutor's comments. Regarding the Commonwealth's repeated reference that Appellant was an individual with a "total disregard for human life," the PCRA court acknowledged that trial counsel initially objected, and that the

trial court sustained his objection. It held that the prosecutor's continued reference was not improper because it was based on evidence presented at trial describing Appellant's actions before, during, and immediately after he fired shots at the victim over the heads of children playing near the street. The court found that the prosecutor's comments did not improperly sway the jury's focus from considering the relevant facts of the case and applying them to the law as instructed by the trial court. Additionally, the PCRA court noted that by not repeating his objection or requesting a limited instruction, trial counsel ensured that the prosecutor's comments were not further highlighted for the jury.

The PCRA court also found that trial counsel was not ineffective in connection with the prosecutor's statement that "all too often in the City, throughout Berks County, people are being shot at. But today is the day ... for accountability." N.T., Feb. 19, 1999, at 452. It reiterated that trial counsel promptly objected, and the trial court sustained the objection, struck the statement from the record, and cautioned the jury to disregard it. *Id.* The PCRA court concluded that a mistrial was not warranted as the trial court cured any prejudice that may have arisen from the comment. Thus, it held that trial counsel's stewardship was not deficient in this regard. Finally, the PCRA court rejected Appellant's underlying challenge to the prosecutor's characterization of his defense strategy as "smoke and mirrors." It held that such comment did not so inflame or mislead the jury to such a degree that a new trial was warranted. Accordingly, it concluded that trial counsel was not ineffective for failing to object, and the derivative claim of appellate counsel ineffectiveness fails.

■■■■ The PCRA court's findings of fact are supported by the record and its legal conclusions are free from error. It is well-established that a prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks. *Commonwealth v. Hutchinson,* 25 A.3d at 306. Further, reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors,

50

forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. *Commonwealth v. Tedford,* 598 Pa. 639, 960 A.2d 1, 33 (2008).

To succeed on a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, the defendant must demonstrate that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. *Commonwealth v. Hanible,* 30 A.3d at 464–65. "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 465 (quoting *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)).

Appellant has failed to satisfy this burden and his layered ineffectiveness claim fails for lack of arguable merit. Initially, we note that we do not condone the prosecutor's repeated reference that Appellant had a "total disregard for human life," after trial counsel twice objected to such comment, and the court sustained such objections. The prosecutor was bound to abide by the trial court's evidentiary ruling, and flagrantly failed to do so. Such fact, however, is not dispositive because the nature of the claim before us is a challenge to trial counsel's ineffectiveness for failing to continue to object when the prosecutor repeated the statement and for failing to seek additional relief. Thus, we must examine whether the repeated reference to Appellant as an individual who "disregarded human life" denied Appellant of his right to a fair trial. Without hesitation, we find that it did not. We agree with the PCRA court that the reference was based on evidence that Appellant pursued the victim and fired shots at him over the heads of children playing. We further agree that the prosecutor's comments did not divert the jury's focus away from considering the relevant facts of the case and applying them to

the law as instructed by the trial court or in any way deny him the right to a fair trial.

Similarly, trial counsel cannot be deemed ineffective in connection with the prosecutor's statement referencing the high crime in Berks County and suggesting that Appellant be held accountable for his conduct. Trial counsel objected promptly, and the trial court struck the comment from the record, and directed the jury to disregard it. There is no evidence to suggest that the jury did not follow the court's instruction. *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1224 (2006) (providing that the law presumes that the jury will follow the court's instructions). Finally, we find that Appellant was not denied a fair trial when the prosecutor referred to his defense strategy of discrediting Commonwealth witnesses as "smoke and mirrors." We agree that such reference did not inflame the jury so as to prevent them from rendering a fair verdict. Thus, trial counsel's performance in relation to the prosecutor comments was not constitutionally deficient, and Appellant's derivative claim of appellate counsel ineffectiveness fails.

### VIII. Failure to Challenge Melendez's Prior Consistent Statement

Appellant next argues that appellate counsel was ineffective for failing to challenge on appeal the admission of a prior statement of Commonwealth witness Wilson Melendez. As noted, Wilson Melendez was the key Commonwealth witness who testified that he and Appellant followed the victim down the street and that Appellant fired shots at the victim in retribution for his robbery of Appellant's associate. Appellant's trial counsel sought to impeach Melendez's testimony by suggesting that he was testifying against Appellant to obtain leniency on his own pending criminal charges. *See* N.T., Feb. 17, 1999, at 84–92. In response, on redirect examination, the Commonwealth attempted to rehabilitate Melendez and bolster his credibility by introducing a written statement he had given to an investigator 15 days after the murder, which

described the murder in a manner that was consistent with Melendez's testimony at Appellant's trial.

Appellant's trial counsel objected to the introduction of the statement, arguing that it was not admissible as a prior consistent statement under Pa.R.E. 613(c).[14] He contended that because Melendez made the statement 15 days after the shooting, at a time when he could have been implicated in the homicide, it was not reliable because Melendez had a motive to lie to avoid his own prosecution. *See* N.T., Feb. 17, 1999, at 103 (where trial counsel stated, "the problem I have with that, Your Honor, is that even assuming that [Melendez] gave [the statement] at an earlier time, it still could be a situation where he thought fast and decided to help himself by giving a statement"). The trial court overruled trial counsel's objection, finding that it went to the weight, rather than the admissibility of the statement. *Id.* at 104–105. At the conclusion of Melendez's testimony, the trial court instructed the jury that it was to consider Melendez's prior consistent statement only for purposes of determining the credibility of Melendez's trial testimony, and not for the truth of the facts asserted in the statement. *Id.* at 119.

In support of his claim that appellate counsel was ineffective for failing to challenge the admissibility of Melendez's statement on appeal, Appellant reiterates that Pa.R.E. 613(c) was not satisfied because Melendez's motive to lie arose before he made the challenged statement. He argues that while trial counsel objected properly to the statement, appellate counsel was ineffective for failing to preserve the issue on appeal.

14. Pennsylvania Rule of Evidence 613(c) provides:

> Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness' denial or explanation.
>
> Pa.R.E. 613(c).

Appellant submits that this claim is stronger than the claims appellate counsel presented on direct appeal, thus, counsel lacked a reasonable basis for failing to raise it. Finally, he concludes that he was prejudiced by appellate counsel's failure to pursue the issue because the outcome of his direct appeal would have been different had this issue been litigated.

The Commonwealth argues that Appellant's claim fails for lack of arguable merit because Melendez's statement was admitted properly. It maintains that in his cross-examination of Melendez, defense counsel repeatedly suggested that the reason Melendez was testifying was to obtain lenient treatment on his own criminal charges. The Commonwealth submits that such implication was sufficient to allow it to rehabilitate Melendez and rebut the claim of improper motive with Melendez's prior consistent statement. Presuming that the statement was admissible, the Commonwealth concludes that appellate counsel was not ineffective for failing to challenge its admissibility on appeal.

 Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness when the statement is offered to rebut a charge of recent fabrication, bias, or improper motive. *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284, 301 (1998); Pa.R.E. 613(c). However, to be admissible to rebut a charge of improper motive, as is the case here, the prior consistent statement must have been made before the motive to lie existed. *Commonwealth v. Hutchinson,* 521 Pa. 482, 556 A.2d 370, 372 (1989) (requiring that, to be admissible, a prior statement must have been made before any corrupt motive has arisen); *see also* Pa.R.E. 613(c) cmt ("The use of the consistent statement will depend upon . . . all of the circumstances that prompted the making of the consistent statement; the timing of that statement, although not conclusive, is one of the factors to be considered."). "[A] prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence." *Commonwealth v. Baumhammers,* 599 Pa. 1, 960 A.2d 59, 89 (2008) (citing Pa.R.E. 613 cmt).

The PCRA court held that because Melendez's statement was made before he was charged or arrested in connection with the instant murder it was "arguably made before any corrupt motive had arisen." PCRA Court Opinion, Feb. 7, 2011, at 39. Moreover, the PCRA court found that even if the statement was admitted improperly, Appellant was not entitled to relief because the admission of Melendez's statement did not prejudice him. It noted that trial counsel's rigorous cross-examination of Melendez suggested to the jury that Melendez could have fabricated his prior consistent statement to avoid being held criminally responsible, despite the fact that he had not yet been charged or arrested at the time. Thus, it concluded that appellate counsel was not ineffective for failing to challenge the admissibility of Melendez's statement on appeal.

We agree with the PCRA court that Appellant is not entitled to relief, and reject the claim for lack of prejudice as we conclude that the outcome of Appellant's direct appeal would not have been different had counsel challenged the admissibility of Melendez's prior statement. Initially, we acknowledge that the trial court mistakenly viewed Appellant's objection to Melendez's statement as a challenge to the weight, rather than the admissibility, of the statement. *See* N.T., Feb. 17, 1999, at 104–105. Pennsylvania Rule of Evidence 613(c) conditions the admissibility of a prior consistent statement on whether the statement was made before the declarant had any corrupt motive to lie, *Hutchinson,* 556 A.2d at 372, and trial counsel's objection was based on the timing of Melendez's statement. We further acknowledge that neither the trial court, the PCRA court, nor the Commonwealth address with specificity why Melendez did not have a motive to lie to avoid his own prosecution when questioned by police 15 days after he had acted as an accomplice to murder.

Nevertheless, even assuming for purposes of argument that the trial court erred by admitting Melendez's prior statement under Pa.R.E. 613(e), we agree with the PCRA court that such claim would not have entitled Appellant to relief on appeal, and thus, the instant ineffectiveness claim fails for lack

of prejudice. The PCRA court recognized that trial counsel meticulously cross-examined Melendez with evidence of his motive to testify favorably for the Commonwealth in order to obtain leniency on charges arising from his participation in the shooting of the victim. Further, on recross-examination of Melendez, trial counsel painstakingly pointed out to the jury that when Melendez made the prior statement, he was concerned about being charged in connection with the shooting. *See* N.T., Feb. 17, 1999, at 113–114 (where trial counsel elicits Melendez's testimony that he was very concerned and frightened that the police suspected him of participating in the murder when he gave police the challenged statement 15 days after the shooting). Thus, the jury was clearly aware of Melendez's motivation to lie in his prior consistent statement to police, and was specifically advised that it could only consider such statement for purposes of credibility and not as substantive evidence. *Id.* at 119.

Under these circumstances and additionally considering the overwhelming evidence of Appellant's guilt, including the testimony of Melendez and Tamika Johnson, the ballistics evidence linking Appellant to the shooting, and Appellant's own incriminating statements to police, there is not a reasonable likelihood that the jury would have reached a different verdict had it not considered Melendez's prior statement to police. Accordingly, Appellant was not prejudiced by appellate counsel's failure to challenge the admissibility of the statement on appeal.

### IX. Failure to Challenge Melendez's Statement Regarding Robbery of Lane

Appellant next argues that appellate counsel was ineffective for failing to challenge on appeal the admission of Melendez's testimony that Lane told Appellant he had been robbed by the victim. He maintains that such testimony, which served as the motive for the murder, was inadmissible hearsay. Appellant acknowledges that trial counsel objected properly, albeit unsuccessfully. *See* N.T., Feb. 17, 1999, at 55 (where trial counsel objected without stating the ground for

the objection, and the trial court overruled such objection, noting only that Appellant was present when Lane stated the victim robbed him). However, he faults appellate counsel for failing to pursue the issue on appeal.

Appellant recognizes that the PCRA court rejected this layered claim of ineffectiveness, holding that Melendez's testimony concerning the victim's robbery of Lane was not hearsay because it was not offered for its truth, but rather for the effect it had on the listener, i.e., to motivate Appellant to kill the victim. He disputes such finding, however, and maintains that the statement was used at trial as substantive evidence. Appellant contends that appellate counsel could have had no reasonable basis for failing to raise this meritorious issue on appeal, and that he was prejudiced by counsel's omission because there is a reasonable probability that had counsel raised the issue, he would have been granted relief.

The Commonwealth responds that Melendez's testimony concerning Lane's statement that the victim robbed him was not hearsay because it was not admitted for the truth of the matter asserted. It explains that the statement was not proffered to demonstrate that the victim robbed Lane, as the victim was not on trial. Rather, the Commonwealth maintains that Lane's statement was admitted to demonstrate Appellant's reaction to the statement, regardless of its truth, and Appellant's motive to kill the victim. Thus, it concludes that appellate counsel was not ineffective for failing to challenge the admissibility of the statement on appeal.

■■■ The term "hearsay" is defined as an out-of-court statement, which is offered in evidence to prove the truth of the matter asserted. *Commonwealth v. Ramtahal,* 613 Pa. 316, 33 A.3d 602, 610 (2011); Pa.R.E. 801(c). Hearsay statements are generally inadmissible unless they fall under an enumerated exception. Pa.R.E. 802. An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement. As noted by the Commonwealth and PCRA court, Lane's statement that he was robbed by the victim was not presented to

demonstrate that the robbery actually occurred, but rather to demonstrate that Appellant was told that it occurred, and such information served as the motive for the victim's murder. *See Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130, 140 (1996) (holding that the victim's statements about the defendant that were communicated to the defendant were not hearsay, when the statements were offered to prove the defendant's motive for killing the victim). As the statement was admitted properly, appellate counsel was not ineffective for failing to challenge its admission on appeal.

### X. Failure to Impeach Tamika Johnson and Request Corrupt Source Charge

██ Appellant argues that trial counsel was ineffective for failing to impeach the testimony of Commonwealth witness Tamika Johnson with evidence that she was motivated to lie in her testimony against Appellant to avoid being prosecuted as an accomplice to the murder. Similarly, he maintains that because Johnson was an accomplice to the murder, trial counsel should have requested a charge informing the jury that Johnson is a corrupt and polluted source, and, therefore, her testimony should be viewed with caution. He asserts that trial counsel could have had no reasonable basis for failing to take such action, and that he was prejudiced by trial counsel's omission. To render this claim cognizable under the PCRA, Appellant further contends that appellate counsel was ineffective for failing to raise the issue on appeal.

The Commonwealth responds that Appellant's layered ineffectiveness claim fails for lack of arguable merit because Johnson was not an accomplice to the murder.[15] It points out that trial counsel adequately cross-examined Johnson on other grounds, including a prior conviction for forgery, and questioned whether she was concerned about being charged in

15. At most, the Commonwealth alleges, the evidence suggests that Tamika Johnson left the home of LaDonna Johnson with Melendez after the murder. It asserts that while there was conflicting testimony as to whether Tamika Johnson was present when Melendez thereafter went to his mother's house to hide the guns, there was no evidence that she aided Melendez in doing so.

connection with this case, to which she repeatedly responded in the negative. Thus, it submits that trial counsel was not ineffective for failing to impeach Tamika Johnson's testimony on the ground that she was an accomplice to the murder or for failing to seek a corrupt source charge. Accordingly, the Commonwealth concludes that appellate counsel was not ineffective for failing to raise this issue on appeal.

The PCRA court likewise rejected Appellant's claim as unsupported by the record. It found there was no evidence that Tamika Johnson actually participated in the crimes against the victim or that she agreed to aid, promote, or facilitate the commission of the crimes, and therefore trial counsel was not ineffective for failing to impeach her on this ground or seek a corrupt source charge relating to her testimony. The court reasoned that, at most, the defense suggested that Johnson assisted Melendez in discarding the firearms involved in the shooting, which, if accepted as true, would not render her an accomplice, but only an accessory after the fact. *See Commonwealth v. Hackett*, 534 Pa. 210, 627 A.2d 719, 725 (1993) (holding that one acting merely as an accessory after the fact is not an accomplice to the crime).

It is well-settled that where an accomplice implicates the defendant, the trial court should instruct the jury that the accomplice is a corrupt and polluted source whose testimony should be considered with caution. *Hanible*, 30 A.3d at 462; *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1181 (1999). The charge is warranted where the evidence is sufficient to present a jury question with respect to whether the Commonwealth's witness is an accomplice. *Id.* at 1181. An accomplice is one who aids or agrees or attempts to aid another person in planning or committing the offense. 18 Pa.C.S. § 306(c)(1)(ii).

Here, the record supports the PCRA court's finding that there was insufficient evidence to present a jury question with respect to whether Johnson was an accomplice. As noted, Johnson testified that on the day of the murder she observed Appellant holding a firearm, and heard him state that the

victim had 48 hours to live because he robbed Lane. N.T., Feb. 17, 1999, at 133–34. Tamika Johnson explained that shortly after the shooting, when she was at the home of LaDonna Johnson, Appellant directed her to find out whether the victim survived, and celebrated when she told him the victim had died. *Id.* at 139, 141. Finally, Tamika Johnson testified that although she left LaDonna Johnson's home at the same time as Melendez, she did not accompany him to his mother's house to hide the murder weapons. *Id.* at 143. Her testimony in no way implicates her in the murder of the victim.

Appellant identifies no other evidence establishing that Johnson participated in the crime. While Melendez's testimony suggested that Johnson may have been present when Melendez disposed of the murder weapons at his mother's house, *see* N.T., Feb. 17, 1999, at 112 (where Melendez reads his prior statement which indicated that he and Tamika Johnson "left with the guns" and then went to his mother's residence where Melendez "stashed [the guns] under the couch in the back of the house"), it does not establish that Johnson assisted, aided or facilitated in any way. Accordingly, trial counsel was not ineffective for impeaching Johnson's testimony on the ground that she was an accomplice or for failing to seek a corrupt source instruction relating to her testimony. Appellant's derivative claim of appellate counsel ineffectiveness for failing to raise the issue on appeal likewise fails.

## XI. Biased Tribunal

Appellant argues that his trial and sentencing were conducted by a tribunal that was biased in cases involving illegal drugs and guns. He relies primarily on comments the trial judge made in connection with an unrelated drug case in January of 2003, nearly four years after Appellant's trial. Specifically, the judge stated that he would impose the maximum sentence in all appropriate violent drug cases to deter drug trafficking in the City of Reading and Berks County.[16]

16. Appellant maintains that this claim is not waived because it is based on the trial court judge's 2003 comments, which did not exist at the

Appellant asserts that the Superior Court has vacated sentences imposed by the trial judge, which followed this sentencing philosophy. *See Commonwealth v. Morales–Gonzalez,* 844 A.2d 1285 (Table) (Pa.Super.2003); *Commonwealth v. Mola,* 838 A.2d 791 (Pa.Super.2003) (vacating maximum sentence imposed in drug case based on judge's belief that maximum sentence was required in all cases to deter drug trafficking). He also cites a 2004 newspaper article in which the trial court judge noted his frustration with cases involving drug dealing and gun violence in the City of Reading. Appellant contends that the trial court judge acted with this same bias against illegal drugs and violence in his own trial and sentencing as demonstrated by his many rulings in favor of the prosecution. Acknowledging that the judge recused himself from Appellant's PCRA proceedings so that his comments about drugs and guns would not be an issue, Appellant submits that the judge should have also recused himself at trial and sentencing.

The Commonwealth responds that Appellant is not entitled to relief because there is no indication that the judge's views regarding the imposition of maximum sentences to deter drug and firearm offenses, as expressed in 2003, affected the judge's rulings at Appellant's trial in 1999. It asserts that the judge recused himself from Appellant's PCRA proceedings only out of an abundance of caution to avoid an appearance of impropriety after having made the aforementioned comments.[17]

The PCRA court likewise rejected Appellant's claim, holding that he failed to identify any specific facts in the record to suggest that the trial court judge acted in an unfair or biased manner. It concluded that the judge's post-trial comments regarding the imposition of maximum sentences in violent drug cases in no way demonstrated bias or the appearance of

time of trial. Thus, he argues that the first opportunity for him to raise the claim was in his PCRA petition.

17. The text of the recusal order states, "And now, this 4th day of January, 2005, upon consideration of Defendant's Motion to Recuse, the undersigned, having been transferred to the Family Division and resolving not to make this Court's prior reported alleged comments about drugs and guns be an issue in the within case, hereby recuses himself."

bias at Appellant's trial and sentencing. The court empha-
sized that it was the jury, and not the trial court judge, who
decided the ultimate issues of guilt and determined the sen-
tence imposed on Appellant.

The PCRA court's conclusions are sound. Here, Appellant
did not seek recusal of the trial court judge, and has failed to
set forth persuasive evidence to support his claim that the
judge's post-trial statements demonstrated bias or an appear-
ance of bias during Appellant's trial and sentencing. *See
Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 367
(1995) (holding that simply because a judge issues rulings
against a defendant at trial does not establish that the judge
holds any bias against the defendant). Moreover, the judge's
views regarding imposition of maximum sentences as a deter-
rent to violent drug trafficking, even if expressed prior to
Appellant's trial, have no relevance where the jury is deter-
mining Appellant's guilt and sentence of death. Accordingly,
this claim fails.

## XII. Failure to Present Mental
## Health Mitigation Evidence

██ Appellant argues that trial counsel was ineffective for
failing to investigate and present evidence of his mental health
impairments during the penalty phase of trial, and that appel-
late counsel was ineffective for failing to litigate adequately
this claim on appeal. The record establishes that trial counsel
was aware that Appellant had previous mental health prob-
lems. Trial counsel did not investigate the nature and extent
of Appellant's mental health history, however, because he
believed such evidence would have been inconsistent with the
jury's finding during the guilt phase that Appellant orchestrat-
ed the murder. Instead, the theory trial counsel pursued
during the penalty phase was that the jury should impose a
sentence of life imprisonment because Appellant's culpability
was mitigated by his age and the fact that he was not the
actual shooter of the victim.[18]

18. As noted, the jury found no mitigating circumstances, and one
 aggravating circumstance, that Appellant created a grave risk of death
 to another person in addition to the victim of the offense.

In post-trial motions, appellate counsel challenged trial counsel's stewardship in this regard. At the post-trial evidentiary hearing, appellate counsel presented, *inter alia*, the testimony of Dr. William F. Russell, a forensic psychologist. Dr. Russell opined that, based on his review of several of Appellant's childhood social service and mental health records, he believed that Appellant likely suffered from language deficits, learning disorders, and organic brain damage, which led to impulsive behavior. N.T., Feb. 17, 1999, at 6–13. Dr. Russell further indicated that the records he reviewed disclosed that Appellant had been removed from the family home when he was a young child due to his mother's inability to care for him, that Appellant had thereafter been placed in a variety of facilities, and that he did not adjust well to such placements. *Id.* at 10. Dr. Russell, however, could not diagnose Appellant with a specific psychological disorder or give an opinion about the mitigating impact of any psychological disorder within a reasonable degree of medical certainty because Appellant would not meet with him or allow testing prior to the hearing. *Id.* at 15.[19]

On direct appeal, this Court rejected the claim of trial counsel ineffectiveness, holding that because Appellant refused to meet with his own mental health expert he "failed to present any evidence at the post-verdict evidentiary hearing which shows that he suffers from any specific mental illness or defect that might have mitigated the crime." *Busanet*, 817 A.2d at 1070. We further held that trial counsel had a reasonable basis for not presenting evidence of Appellant's mental health history because it could have alienated the jury as it was inconsistent with evidence establishing that Appellant controlled the entire murder operation. *Id.* at 1072.[20]

19. As noted *infra*, immediately after Dr. Russell's testimony at the post-trial evidentiary hearing, Appellant purportedly changed his mind and indicated that he would submit to a mental health evaluation. Appellate counsel then sought a continuance, which the trial court denied. *Id.* at 26–28.

20. Justice Saylor authored a concurring opinion, joined by Former Chief Justice Zappala, in which he disagreed with such conclusion, finding that evidence of Appellant's mental health problems would not

It is evident that Appellant's current claim of trial counsel ineffectiveness has been previously litigated on direct appeal and, therefore, is not cognizable under the PCRA. *See* 42 Pa.C.S. § 9545(a)(3) (providing that a PCRA petitioner must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived). Appellant recognizes that appellate counsel raised this issue on direct appeal, but contends that he did so in an ineffective manner because counsel only uncovered a small portion of the available mental health mitigating evidence. To demonstrate appellate counsel's deficiency, Appellant proffers evidence appellate counsel should have presented during the post-trial evidentiary hearing to support the underlying claim of trial counsel ineffectiveness. Specifically, he relies on evidence presented at the PCRA hearing demonstrating that Appellant displayed emotional problems as a child and that his relatives struggled with mental illness, N.T., Apr. 9, 2010, at 34–36; that he received in-patient psychiatric treatment when he was 8 years' old, N.T., Jan. 25, 2010, at 67–68; that his former counselor believed he had been raised in a toxic environment where he experienced physical, verbal, and mental abuse; N.T., Apr. 9, 2010, at 9–10; and that after Appellant's trial, mental health experts opined that he exhibited symptoms of, *inter alia,* brain damage, bipolar disorder with psychotic features, post traumatic stress disorder, dementia due to head trauma, learning disorder, and borderline intellectual functioning. N.T., Jan. 25, 2010, at 136, 127, 130, 133–34, respectively. These mental health experts, Appellant contends, could have established the existence of two mitigating circumstances, *i.e.,* that he was acting under an extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2), and that his capacity to appreciate the criminal nature of his conduct and to conform his conduct to the law were substantially impaired at the time of the shooting. *Id.* § 9711(e)(3).

necessarily be inconsistent with the defense theory of mitigation. *Id.* at 1078. Justice Saylor found, however, that Appellant failed to demonstrate prejudice because his own refusal to meet with the mental health expert was fatal to his claim as it prevented the expert from rendering a diagnosis relevant to establish mitigating circumstances. *Id.* at 1079.

Ignoring the fact that appellate counsel's performance was hampered by Appellant's own refusal to be examined by the mental health expert, he asserts that appellate counsel had no reasonable basis for failing to conduct a thorough investigation into his mental health background. He further concludes that he was prejudiced by appellate counsel's performance because there is a reasonable probability that this Court would have granted relief on direct appeal had counsel made a more complete presentation of available mental health mitigating evidence.

The Commonwealth responds that appellate counsel's performance cannot be deemed constitutionally deficient when it was Appellant's own refusal to submit to a mental health evaluation, and not any dereliction on the part of appellate counsel, that was fatal to his claim on direct appeal. It notes that during the post-trial evidentiary hearing, Appellant apparently changed his mind and expressed his willingness to submit to a mental health evaluation, which prompted appellate counsel to request a continuance of the hearing, the fifth continuance requested by the defense. N.T., Dec. 17, 1999, at 26–27. The Commonwealth cites the following excerpt from our decision on direct appeal, which affirmed the trial court's denial of such continuance by quoting the trial court's opinion:

Defendant was given more than adequate time to consent to [a mental health] exam and failed to do so. We do not believe that our Court system should be held hostage by a fickle Defendant who cannot cooperate with his own counsel. The reason this continuance was denied was because of Defendant's own actions, and for those actions Defendant must be held accountable.

*Busanet*, 817 A.2d at 1076–77 (citing Trial Court's Opinion at 23). The Commonwealth submits that Appellant cannot now rely on opinions of medical experts, which presumably could have been presented on direct appeal had Appellant cooperated with appellate counsel and allowed the mental health expert to examine him.[21]

21. As set forth in n. 4, *supra*, at the time Appellant filed his post-verdict motions in 1999, defendants were required to challenge counsel's

The PCRA court addressed Appellant's claim of trial and appellate counsel ineffectiveness on the merits, and denied relief. Initially, it rejected the conclusions of Appellant's mental health experts who opined at the PCRA hearing that he was acting under an extreme mental or emotional disturbance, and that his capacity to appreciate the criminal nature of his conduct was substantially impaired at the time of the shooting. PCRA Court Opinion, Feb. 7, 2011, at 64. Further, crediting trial counsel's testimony regarding his mitigation strategy, the PCRA court held that under the circumstances of the particular case, it was reasonable for trial counsel to argue for life imprisonment on the basis of Appellant's youth and diminished culpability as an accomplice, instead of on grounds of mental infirmity. Finally, it noted that Appellant was not prejudiced by trial counsel's performance because, considering the evidence of premeditation and control over the execution of the murder, it was unlikely that the jury would have concluded that Petitioner acted under an extreme emotional or mental disturbance or an impaired capacity to appreciate the criminal nature of his conduct.

Significantly, the PCRA court independently rejected the claim of appellate counsel ineffectiveness, finding that appellate counsel's investigation and presentation of mental health mitigation evidence at the post-trial evidentiary hearing was reasonable. It emphasized that appellate counsel could not present a diagnosis from the mental health expert because Appellant refused to submit to testing. The PCRA court noted that, nevertheless, appellate counsel presented the testimony of the mental health expert who, based upon a review of mental health records from Appellant's childhood, opined that Appellant likely suffered from organic brain damage which led to his impulsive behavior. Further, it noted that appellate counsel called several of Appellant's relatives as witnesses at the post-trial evidentiary hearing, who testified that Appellant

performance at the earliest stage where counsel no longer represented them. *Hubbard,* 372 A.2d at 695 n. 6. As new counsel (appellate counsel) filed Appellant's post-verdict motions, he was required to raise any claims of trial counsel ineffectiveness and present evidence to support such claims at the evidentiary hearing.

was a good person who got along well with his family. Thus, it concluded that appellate counsel's performance in this regard was not ineffective.

The PCRA court's conclusions, which are germane to the only cognizable claim of ineffectiveness of appellate counsel, are supported by the record and free from legal error. The record supports the PCRA court's findings that Appellant failed to submit to a mental health evaluation, which was fatal to his claim of trial counsel ineffectiveness. Appellate counsel cannot be deemed ineffective when it was Appellant who refused to cooperate in his own mitigation defense by submitting to a mental health evaluation. *See Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997, 1008 (1998) (rejecting claim that trial counsel was ineffective for failing to request jury instruction on defense of diminished capacity where defendant refused to cooperate with counsel or psychiatrist hired by counsel to examine him). Nevertheless, appellate counsel made other efforts to support the claim of trial counsel ineffectiveness. He presented the testimony of Dr. Russell at the post-trial evidentiary hearing who, based on his review of Appellant's childhood social service and mental health records, opined that Appellant likely suffered from brain damage as a child, which could lead to impulsive behavior. Also, appellate counsel sought a continuance when Appellant changed his mind during the post-trial evidentiary hearing, and agreed to be examined by the mental health professional. On appeal, appellate counsel further raised a separate challenge to the trial court's denial of the continuance. Finally, appellate counsel called several of Appellant's relatives as witnesses in an effort to present additional mitigation evidence.

Under the circumstances presented, the actions taken by appellate counsel were eminently reasonable and did not constitute ineffective assistance of counsel. Appellant, himself, acknowledges appellate counsel's commendable efforts when he states that "the evidence appellate counsel presented during the post-sentencing hearing should have been enough to demonstrate ineffective assistance [of trial counsel]. However, appellate counsel's efforts were deemed inadequate by the

trial court, and by this Court." Brief of Appellant at 64. The fact that appellate counsel was not ultimately successful does not render his stewardship constitutionally deficient. *See Commonwealth v. Walker*, 613 Pa. 601, 36 A.3d 1, 12 (2011) (holding that merely because a tactic was ultimately unsuccessful does not render trial counsel ineffective). Accordingly, this claim of appellate counsel ineffectiveness fails.[22]

## XIII. Cumulative Error

 Finally, Appellant argues that if this Court concludes that he is not entitled to relief based on the prejudicial effect of any single error, he is entitled to relief because of the cumulative prejudicial effect of all of the errors set forth in his appellate brief. It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 532 (2009). Accordingly, where ineffective-

---

22. Within his ineffectiveness claim relating to mental health mitigation evidence, Appellant additionally challenges appellate counsel's stewardship for failing to investigate and present evidence documenting his traumatic childhood, including his learning difficulties and endurance of mental and physical abuse. On direct appeal, when disposing of Appellant's claim relating to mental health mitigation, this Court rejected Appellant's reliance on evidence of his troubled childhood as a source of mitigation evidence. *See Busanet*, 817 A.2d at 1073 (holding that the evidence of a troubled childhood cited by Appellant was distinguishable in nature and quality from that presented in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), where the United States Supreme Court found that trial counsel was ineffective for failing to investigate and present evidence of the defendant's "nightmarish" childhood); *Busanet*, 817 A.2d at 1072 (acknowledging that presentation of a defendant's troubled childhood is not always productive as it may be viewed as an attempt to trivialize the murder). Thus, the claim of trial counsel ineffectiveness has been previously litigated on direct appeal, and is not cognizable under the PCRA. 42 Pa.C.S. § 9545(a)(3). To the extent that Appellant preserved any challenge to appellate counsel's performance in failing to litigate the issue effectively on appeal, this claim fails for lack of merit as Appellant has not identified what course of action appellate counsel omitted or overlooked. In fact, he concedes that "the evidence that appellate counsel presented was significant, and should have been sufficient to show that trial counsel was ineffective, but only scratched the surface of what would have been available had counsel undertaken a reasonably thorough investigation." Brief of Appellant at 68. This is insufficient to satisfy Appellant's burden of demonstrating that appellate counsel's performance was constitutionally deficient.

ness claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 671 (2008). "When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." *Koehler*, 36 A.3d at 161 (citations omitted).

In the instant case, we have rejected claims of ineffectiveness based on a lack of prejudice only in connection with: (1) Issue II, relating to trial counsel's failure to investigate and present evidence of the victim's violent character during the penalty phase; (2) Issue V, relating to trial counsel's failure to object to the Commonwealth's introduction of Appellant's prior statement that he was "running from the law in New York;" and, (3) Issue VIII, relating to appellate counsel's failure to challenge on appeal the admissibility of Wilson Melendez's prior statement. We have already concluded that these claims did not prejudice Appellant individually, and now hold that they do not prejudice him when considered in the aggregate.

Accordingly, for the reasons set forth herein, we affirm the order of the PCRA court dismissing Appellant's PCRA petition.[23]

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices EAKIN, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Justice SAYLOR, concurring and dissenting.

I agree with Appellant's position that: the trial court erred by overruling the defense objection to Commonwealth rebuttal evidence of a remark by Appellant that he contemplated assassinating attendees (presumably, the victim's family and

**23.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

friends) at the funeral for the victim; the inflammatory effect of such evidence substantially outweighed its probative value, particularly in light of the Commonwealth's otherwise very substantial case of guilt; and appellate counsel lacked any reasonable basis for failing to advance the salient claim of trial court error. I support the majority's holding affirming the order of the post-conviction court as to the guilt phase based on an evaluation of the prejudice criterion of the ineffective inquiry, again, in view of the strong evidence of guilt. However, given the significant possibility of spillover prejudice which may have affected the penalty determination, I would vacate the death verdict and remand for a new sentencing hearing.