J-S41018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                            :               PENNSYLVANIA
                                            :

                       v.                         :
                                            :

JASON NATHAN BREDBENNER        : 
                                            :

               Appellant                :      No. 221 MDA 2019

Appeal from the PCRA Order Entered January 9, 2019
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001302-2016

BEFORE:   LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY MURRAY, J.:                      **FILED JULY 31, 2019**

Jason Nathan Bredbenner (Appellant) appeals from the order denying his timely petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On February 8, 2017, a jury found Appellant guilty of possession with intent to deliver a controlled substance (PWID), recklessly endangering another person (REAP), and simple assault. The trial court summarized the relevant testimony from Appellant's trial as follows:

> [O]n May 18, 2016, Officer Cody Applegate of the Shenandoah Borough Police Department was dispatched to [Appellant's] residence at 23 South Chestnut Street in Shenandoah for a heroin overdose. Upon arriving at the location, Applegate heard sounds emanating from inside the residence, including what he described as a male's voice, running, a door open and a bag of garbage hit the ground. After knocking several times on the front door, Applegate entered the residence and found [Victim] unconscious on a couch. [Victim's] skin was blue, a hypodermic needle was next to her[,] but no other paraphernalia was visible. Applegate asked [Appellant], who was also present, if he had moved the

---

* Retired Senior Judge assigned to the Superior Court.

"bags." [Appellant] said he had not. Applegate asked several times if there was anything in the house that had been moved. [Appellant] denied that any contraband was in the house.

After emergency personnel arrived, Applegate saw that the back door of the residence was open. He asked [Appellant] if anyone had run out the door. [Appellant] said he had left the door open. Applegate noticed an open garbage bag with small bags of what he believed had contained heroin. He also found a box engraved with the name "Eddie," [Appellant's] nickname. Two needles and empty heroin bags were in the box. While EMS personnel were working on [Victim], Applegate found heroin bags on the floors of upstairs rooms together with other drug paraphernalia. Eight full bags of heroin and two empty bags with the term "Fresh Direct" were recovered.

Shenandoah Police Officer Travis Bowman was on duty May 18, 2016, when he was dispatched to the scene. The caller said someone was overdosing in the house. While en route, Bowman received a second dispatch for a call that had been received from another caller who was identified as [Appellant]. Like Applegate, Bowman heard running in the house and the shutting of a door after the officers had arrived but before they entered [Appellant's] residence.

[Victim] testified that she had gone to [Appellant's] home to buy heroin from him that day. [Victim] said she had been referred to the house and to [Appellant] as being someone to see for heroin. Upon arriving at the residence, [Victim] gave [Appellant] $120.00. [Appellant] left the home but returned with heroin. [Victim] asked that he inject her. [Appellant] prepared the heroin and injected it into [Victim's] left arm. After a period of time, [Victim] asked that [Appellant] do so again and he did. [Victim] described how [Appellant] placed water in a cup with heroin and then drew the substance through a cotton ball into a syringe and injected it into her left arm.

Ann Marie Kovalewski, a Shenandoah ambulance paramedic, testified that she responded to the scene for a report of an overdose and a person not breathing. Three EMTs were at the scene when she arrived. [Victim] was cyanotic, exhibited shallow breathing and low heart rate. Because the Narcon given to [Victim] nasally by the EMTs had not been effective to revive her, Kovalewski gave [Victim] Narcon intravenously. [Victim]

responded and became conscious. According to Kovalewski, Narcon only works to revive a person who is on narcotics.

A forensic scientist from Pennsylvania State Police Crime Laboratory analyzed evidence collected by the Shenandoah police that day and found that the bags submitted contained heroin.

Trial Court Opinion, 4/21/17, at 2-4.

A prior panel of this Court summarized the procedural history:

Following trial, the jury found Appellant guilty of PWID, REAP and simple assault and not guilty of tampering with physical evidence . . . . On March 17, 2017, the trial court sentenced Appellant to three to six years in prison for PWID, one to two years in prison for REAP, and two years of probation for simple assault. The sentences were ordered to run consecutively. Thus, in the aggregate, the trial court sentenced Appellant to serve four to eight years in prison. Appellant timely filed a post-sentence motion, which the trial court denied on April 21, 2017. Appellant appealed to this Court.

***Commonwealth v. Bredbenner***, 757 MDA 2017 at 3-4 (Pa. Super. Mar. 20, 2018) (unpublished memorandum). On March 20, 2018, this Court affirmed Appellant's judgment of sentence. ***See id.***

On July 9, 2018, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition on December 3, 2018. On December 19, 2018, the PCRA court held a hearing on Appellant's PCRA petition. On January 9, 2019, the PCRA court denied the petition. This timely appeal followed.[1]

On appeal, Appellant presents the following issues for review:

WAS [TRIAL] COUNSEL INEFFECTIVE IN HIS ASSISTANCE BY:

_____

[1] Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

A. FAILING TO REVIEW, INSPECT OR OTHERWISE FAMILIARIZE HIMSELF WITH PERTINENT PHOTOGRAPHIC EVIDENCE NECESSARY TO [APPELLANT]'S DEFENSE, THAT WOULD HAVE PROVED [VICTIM] COMMITTED PERJURY;

B. WAITING UNTIL ONE (1) OR TWO (2) DAYS PRIOR TO TRIAL TO ATTEMPT TO LOCATE WITNESSES THAT COULD AUTHENTICATE PHOTOGRAPHIC EVIDENCE AND THAT [VICTIM] HAD BEEN AT [APPELLANT]'S HOME ON PRIOR OCCASIONS AND HAD BEEN ROMANTICALLY INVOLVED WITH [APPELLANT].

Appellant's Brief at 5.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." **Id.**

Both of Appellant's issues challenge trial counsel's effectiveness with respect to preparation for trial. Therefore, we address the issues together. Appellant argues that trial counsel was ineffective because he did not review or investigate, until a day or two prior to Appellant's trial, photographs on Appellant's phone showing Victim and another woman in Appellant's home and video of Appellant and Victim engaging in sexual relations. Appellant asserts that trial counsel should have used the photographs and video to impeach Victim's testimony indicating that she had never been to Appellant's home and was not romantically involved with Appellant. Appellant also claims that trial

counsel "failed to identify potential witnesses and failed to locate known witnesses." Appellant's Brief at 12.

In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Bomar*, 104 A.3d at 1188.

Additionally:

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffective assistance of counsel] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

- 5 -

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012).

We conclude that Appellant's claims do not merit relief. Appellant has failed to establish the prejudice prong of the ineffective assistance of counsel test. *See Bomar*, 104 A.3d at 1188. Appellant's brief is devoid of any explanation as to how trial counsel's failure to review, investigate, and utilize the photographs and video of Victim on Appellant's phone to impeach Victim's testimony prejudiced Appellant at trial. Indeed, Appellant provides no discussion explaining how there was a reasonable probability that, but for trial counsel's failure to impeach Victim's testimony, the result of Appellant's trial would have been different. *See King*, 57 A.3d at 613.

Moreover, as the PCRA court points out, other than its use as impeachment evidence, the photographs and video do not help Appellant's case because "the material issue at trial was whether [Appellant] had supplied [Victim] heroin, not whether she had known [Appellant] prior to the incident." PCRA Court Opinion, 3/18/19, at 8. The trial court's recitation of the facts of this case and the transcript of Officer Applegate's testimony reveal more than ample direct and circumstantial evidence of Appellant's crimes, regardless of whether trial counsel impeached Victim's testimony. *See* Trial Court Opinion, 4/21/17, at 2-4; *see also* N.T., 2/8/17, at 33-40. Therefore, there is no basis on which to conclude that trial counsel's failure to review, investigate, and utilize the photographs and video of Victim on Appellant's phone prejudiced Appellant.

Finally, with respect to Appellant's claim that trial counsel was ineffective for failing to identify and locate potential witnesses, Appellant does not identify what witnesses trial counsel should have called at trial or address any of the factors set forth in *Sneed*. Thus, this claim lacks merit.

Accordingly, based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Appellant's PCRA petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2019