J-S55012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACK OLIVER EDMUNDSON, JR. | : | |
| | : | |
| Appellant | : | No. 163 WDA 2019 |

Appeal from the PCRA Order Entered December 24, 2018
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000211-2014

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 14, 2019**

Jack Oliver Edmundson, Jr. (Appellant) appeals from the order denying his timely petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

Appellant and Frank Petro (the victim) were involved in an illegal "Brown Bag Lottery."[1]  On December 31, 2013, Appellant went to the victim's place of business, a gun store, in Conemaugh Township, Indiana County. Surveillance video cameras located on the exterior and interior of the gun store recorded Appellant's actions.  The PCRA court summarized:

> Upon entering the gun shop, [Appellant] removed a hand gun
> from behind the counter and waited until [the victim emerged]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] "A Brown Bag Lottery is based on the State Daily Number Lottery.  Tickets would be sold to individuals for specific amounts for fictitious fundraisers." PCRA Court Opinion, 2/26/19, at 2-3.

from a back room. An argument between the men occurred and [Appellant] pointed the gun at [the victim] and fired two shots[,] both of which struck [the victim] in the torso. [The victim] collapses and falls to the floor. [Appellant] then spreads an accelerant around the inside of the premises. During this time, [the victim] is able to get to his feet and a struggle between [the victim] and [Appellant] takes place. [Appellant] is still in possession of the hand gun and [the victim] is shot an additional two times. [Appellant] also suffers a gunshot wound to his leg, which renders him unable to flee the scene. [Appellant] contacted 911 for emergency assistance due to his wound.

PCRA Court Opinion, 2/26/19, at 3.[2] The victim died as a result of the gunshots. Forensic pathologist, Daniel Brown, M.D., testified that any of the victim's four gunshot wounds would have been fatal without treatment. N.T., 2/18/15, at 13-18 (hearing on Appellant's pre-trial motion).

Appellant was charged with criminal homicide and other offenses, and the Commonwealth filed a notice of aggravating circumstances seeking the death penalty. The PCRA court summarized the procedural history:

On September 21, 2015, pursuant to a plea bargain, [Appellant] entered a guilty plea to the offense of First-Degree Murder.[3] In return, the Commonwealth agreed to not seek the death penalty and dismissed all other charges. [Appellant was represented by Gary Knaresboro, Esquire, and Michael Marshall, Esquire (collectively, Plea Counsel). Appellant] completed a written plea colloquy and the [c]ourt conducted an oral plea colloquy with [Appellant]. The court sentenced [Appellant] to life in prison without the possibility of parole.

[Appellant] did not file any Post-Sentence Motions with this court, or a direct appeal to the Superior Court pursuant to

---

[2] The PCRA court's Rule 1925(a) opinion adopts and attaches the PCRA court's December 24, 2018 opinion.

[3] 18 Pa.C.S.A. § 2502(b).

Pa.R.Crim.P. 720.

On April 1, 2016, [Appellant] filed a timely *pro se* Petition for Post Conviction Collateral Relief. On November 4, 2016, [Appellant] filed a *pro se* Amended Petition for Post Conviction Collateral Relief. Andrew Skala, Esquire was appointed to represent [Appellant]. On August 21, 2017, [Attorney] Skala filed a Post Conviction Collateral Relief Petition on behalf of [Appellant]. The [PCRA c]ourt took testimony on the Petitions on April 2, 2018 and June 12, 2018. [Appellant, Attorney Knaresboro, and Attorney Marshall testified.]

PCRA Court Opinion, 2/26/19, at 2.

The PCRA court denied relief by order dated December 24, 2018. On January 23, 2019, Appellant filed this timely appeal. On January 24, 2019, the PCRA court ordered Appellant to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925. Although the PCRA court's order directed that Appellant file his statement within 21 days of the January 24, 2019 order, Appellant's counsel filed the statement approximately one week late, on February 22, 2019. Under Pa.R.A.P. 1925(c)(3), counsel's late filing constitutes *per se* ineffectiveness. However, the PCRA court reviewed the issues raised in Appellant's statement and issued an opinion consistent with Pa.R.A.P. 1925(a). Accordingly, the late filing does not impede our review. **See Commonwealth v. Boniella**, 158 A.3d 162, 164 (Pa. Super. 2017) (where trial court addresses issues raised in an untimely Rule 1925(b) statement, we need not remand but may address the issues on the merits); **see also Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) ("if there is an untimely filing, this Court may decide the appeal on

- 3 -

the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal").

On appeal, Appellant presents five issues for review, which we have reordered for ease of disposition:

> I. Whether the [PCRA] Court erred when it made a finding that [Plea] Counsel was effective counsel, even though counsel never hired a ballistics expert to formulate a defense strategy that the handgun misfired, which would nullify a conviction for First Degree Murder?

> II. Whether the [PCRA] Court erred when it made a finding that [Plea] Counsel was effective counsel, even though Counsel induced [Appellant] to plead guilty due to counsel failing to establish any kind of strategy prior to trial?

> III. Whether the [PCRA] Court erred when it made a finding that [Plea] Counsel was effective counsel, even though [Plea] Counsel did not pursue a diminished capacity due to [Appellant] taking the prescription drug, Ambien?

> IV. Whether the [PCRA] Court erred when it made a finding that [Plea] Counsel was effective counsel, even though [Appellant] did not understand that he was receiving a life sentence without the possibility of parole for a plea of First Degree Murder?

> V. Whether the [PCRA] Court erred when it made a finding that [Plea] Counsel was effective counsel, even though the [Appellant's] guilty plea was involuntary and unknowingly due to he being [*sic*] under the influence of prescription medication at the time of his plea?

Appellant's Brief at 7.

We begin our review of the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of

- 4 -

the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.* "Because the PCRA court was afforded the opportunity to assess and weigh the credibility of [witnesses] at the PCRA hearing, we should refrain from disturbing its credibility determinations." *Commonwealth v. Spotz*, 896 A.2d 1191, 1227 (Pa. 2006).

Instantly, all of Appellant's issues challenge the PCRA court's denial of Appellant's ineffective assistance of counsel claims. In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Id.* "Counsel will not be deemed ineffective for failing to raise a meritless claim." *Spotz*, 896 A.2d at 1210.

We address Appellant's first and second issues together. First, Appellant argues that the trial court erred in not finding Plea Counsel ineffective for failing to obtain a ballistics expert to develop a defense strategy that the gun

misfired. Appellant posits that an "expert could have explained that the trigger was impacted by [Appellant] holding the gun tightly and using [2] pairs of gloves." Appellant's Brief at 23. Appellant reasons that such a defense would have "nullif[ied] a first degree murder conviction." *Id.* at 21. Additionally, Appellant maintains that the killing was not willful, deliberate, or premeditated, but rather accidental. *Id.* at 23.

Next, Appellant alleges that the PCRA court erred in not finding Plea Counsel ineffective for failing to establish, generally, any defense strategy, which in turn caused Appellant to plead guilty. Appellant claims that he informed Plea Counsel that the gun misfired, but Plea Counsel did not employ a ballistics expert. Appellant further contends that at the PCRA hearing, neither Plea Counsel "was able to testify that [Plea Counsel] possessed any strategy." Appellant's Brief at 29. Instead, Appellant maintains, Plea Counsel "informed him that he did not have a fighting chance at trial." *Id.* at 30. For these reasons, Appellant claims he was induced to plead guilty.

This Court has stated:

It is well settled that, where a guilty plea has been entered, all grounds of appeal are waived other than challenges to the voluntariness of the plea and the jurisdiction of the sentencing court. Thus allegations of ineffective assistance of counsel in connection with entry of the guilty plea will serve as a basis for relief only if the ineffectiveness caused [the petitioner] to enter an involuntary or unknowing plea.

*Commonwealth v. Boyd*, 835 A.2d 812, 815 (Pa. Super 2003) (citation omitted).

At the PCRA hearing, Appellant testified that he did not intend to shoot the victim and instead, he accidentally discharged the gun when the victim lunged at him; Appellant also asserted he did not know "how much [he was] actually pulling the trigger" because he was wearing two pairs of gloves. N.T. PCRA Hearing, 4/2/18, at 33-35. Appellant further testified that he told Plea Counsel that he wished to proceed to trial, but Plea Counsel never discussed with him any defense strategy, or the ballistics of the gun discharging. *Id.* at 46, 49.

To the contrary, Attorney Knaresboro testified that he met with Appellant 30 to 40 times prior to the plea hearing. N.T. PCRA Hearing, 6/12/18, at 144. Both Attorney Knaresboro and Attorney Marshall testified that Appellant consistently told them that he could not remember the shooting, and never claimed that the shooting was accidental; Plea Counsel also testified that the surveillance video would not support any defense of an accidental shooting or self-defense. *Id.* at 99-101, 146-147, 157. Specifically, Attorney Knaresboro stated that the video showed after the victim was first shot, Appellant continued to point the gun at the victim for 40 seconds, fired a second shot, did not attempt to render aid or call 911, and took the victim's wallet and poured accelerant on the victim. *Id.* at 157. Attorney Knaresboro further testified that he did not believe a ballistics report was appropriate, where Appellant never mentioned "a hair-trigger," a problem with the gun, or an accidental shooting. *Id.* at 156-158.

Additionally, Attorney Marshall testified that Appellant never indicated that he wanted to go to trial, while Attorney Knaresboro testified that Appellant consistently stated that he did not want to go to trial. N.T. PCRA Hearing, 6/12/18, at 97-98, 150-151. Finally, Attorney Knaresboro stated that when he twice offered to show the surveillance video to Appellant — when Counsel first received the video and in advance of Appellant entering his guilty plea — Appellant refused to watch it. *Id.* at 168.

In considering the above testimony, the PCRA court was free to weigh the witnesses' credibility and resolve inconsistencies. *See Spotz*, 896 A.2d at 1227. We further note that regardless of the circumstances of the first gunshot, Appellant does not dispute Plea Counsel's testimony that the video showed that after the victim was shot, Appellant pointed the gun at the victim for 40 seconds before firing a second shot. On this record, the PCRA court did not err in concluding that Plea Counsel was not ineffective for failing to pursue a ballistics defense. *See Spotz*, 896 A.2d at 1210. As the PCRA court stated:

> Faced with [the Commonwealth's] overwhelming evidence, counsel's advice to [Appellant] to plead to First Degree Murder in return for the Commonwealth withdrawing the death penalty was reasonable and rational. [Appellant] received a clear benefit from the plea bargain; there was a good chance that [he] could receive the death penalty.

PCRA Court Opinion, 2/26/19, at 10. Upon review, we agree. *See Spotz*, 896 A.2d at 1231.

In his third issue, Appellant argues that Plea Counsel was ineffective for not pursuing a defense of diminished capacity due to Appellant taking the

prescription drug Ambien. Appellant asserts that Plea Counsel failed to provide to Dr. Christine Martone — the psychiatrist retained by Plea Counsel to examine Appellant — documentation showing that Appellant was prescribed Ambien. Appellant claims that when he took Ambien, his moods were altered, he sometimes experienced confusion, and he suffered memory loss. Appellant cites Plea Counsel's testimony that Appellant "consistently did not remember the details of [the] homicide."[4] Appellant's Brief at 35.

In rejecting this claim, the PCRA court credited the testimony of both Plea Counsel "that at no time did [Appellant] inform them that he was taking Ambien and that it was affecting his ability to understand what he was doing." PCRA Court Opinion, 2/26/19, at 7; *see also* N.T. PCRA Hearing, 6/12/18, at 103-104, 163. Upon review, we discern no basis upon which to disturb this credibility finding. *See Spotz*, 896 A.2d at 1227. Furthermore, Appellant ignores that both Plea Counsel testified that they engaged Dr. Martone to conduct a psychological examination of Appellant, but Dr. Martone opined that Appellant did not evidence a diminished capacity. N.T. PCRA Hearing, 6/12/18, at 103-104, 161, 164. Attorney Knaresboro further testified that he conveyed Dr. Martone's opinion to Appellant, and Appellant did not express any disagreement or dissatisfaction. *Id.* at 165. Where Plea Counsels' testimony established a reasonable basis for not pursing a diminished capacity

---

[4] We note Appellant advances inconsistent arguments: that the shooting was accidental and that he did not remember the shooting.

- 9 -

defense, no relief is due. ***Bomar***, 104 A.3d 1179, 1188.

In his fourth issue, Appellant contends that the PCRA court erred in not finding Plea Counsel ineffective where, allegedly, Appellant did not understand that his plea would result in a life sentence without parole. Appellant cites his own PCRA hearing testimony, that on the day of the plea, Plea Counsel "was pressed for time . . . as to whether to . . . accept [*sic*]" the Commonwealth's plea offer of "life in prison." Appellant's Brief at 26. Appellant avers that when he completed the written colloquy, Plea Counsel simply told him to "answer 'yes' or 'no'" but did not provide any guidance. ***Id.*** at 27. Appellant further maintains that at the subsequent plea hearing, although it was stated "that the sentence was life in prison," neither Plea Counsel nor the trial court specified that Appellant would not be eligible for parole. Instead, Appellant claims — without further explanation — that he believed a "life sentence" meant 20 to 25 years of imprisonment with the possibility of parole. ***Id.*** at 17.

In rejecting this claim, the PCRA court explained:

The Court, in the oral plea colloquy, informed [Appellant] that there were two possible penalties for First Degree Murder[:] death or life imprisonment. [N.T. Plea & Sentencing Hearing, 9/21/15, at 13.]

In the written plea colloquy on page 2 . . . it clearly states that the plea was to First Degree Murder and that the penalty was "life without the possibility of parole". [Appellant's] initials appear on the page, and on page 9 [Appellant] signed an affirmation that he had read the document and understood its full meaning. In addition, [Attorney] Knaresboro testified that when he and [Attorney] Marshall reviewed the written plea colloquy with

[Appellant], he specifically explained the penalty to [Appellant] and pointed to the language on Page 2 with his pen.

[Appellant's] claim that he believed or was told that a life - sentence was 20 years to life or 25 years to life is not supported by the record.

PCRA Court Opinion, 2/26/19, at 11.

The PCRA court's explanation is supported by the record. *See Busanet*, 54 A.3d at 45. We additionally note that at the plea hearing, the court asked whether the parties had "an agreement as to the death penalty." N.T. Plea & Sentencing Hearing, 9/21/15, at 3. The Commonwealth responded that it would not seek the death penalty and stated, "We believe that it is a mandatory life without possibility of parole." *Id.* at 4. Finally, Appellant does not discuss or explain why he believed the multiple references to a "**life** sentence" meant a sentence of 20 to 25 years of imprisonment. No relief is due.

In his final issue, Appellant argues that the PCRA court erred in not finding Plea Counsel ineffective where Appellant's guilty plea was not voluntary or knowing because he was under the influence of prescription medication. Appellant states he "was prescribed Seroquel the night before his plea," which caused him to be "groggy and somewhat confused" at the plea hearing. Appellant's Brief at 31-32. Appellant further claims that he took Neurontin, whose side effects include drowsiness and memory loss, as well as Klonopin. *Id.*

This Court has stated:

Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise.

\* \* \*

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

**Commonwealth v. Yeomans**, 24 A.3d 1044, 1047 (Pa. Super. 2011)

(citation omitted).

In denying relief, the PCRA court explained:

Both [Attorney] Marshall and [Attorney] Knaresboro met with [Appellant] immediately prior to the entry of the plea. Both testified that [Appellant] was coherent and able to discuss the case. . . .

[Appellant], also with the assistance of [Attorney] Knaresboro and [Attorney] Marshall, completed a written plea colloquy. The colloquy is a part of the Court Record. In the written colloquy, [Appellant] indicated that he understood his rights, was voluntarily entering his plea, and he was not taking any medications that would affect his ability to think or his free will.

In addition to the written colloquy, the Court conducted an oral colloquy with [Appellant]. During the colloquy, the Court asked [Appellant] if he was under the influence of any drugs, alcohol, or intoxicating substances, had ever been in a Mental Hospital or Institution, had ever received treatment for a mental disease or disability or was suffering from any physical or mental disability that would prevent him from fully understanding what was being said to him. To all these questions, [Appellant] responded "no." [N.T. Plea & Sentencing Hearing, 9/21/15, at 6.] At no time did [Appellant] indicate to counsel or the court that he was under the influence of drugs that affected his ability to understand and make decisions. A person who elects to plead guilty is bound by the statements he makes in open Court while

- 12 -

under oath and he may not assert grounds to set aside the plea that contradicts the statements made in his plea colloquy.

PCRA Court Opinion, 2/26/19, at 7-8.

Consistent with the foregoing, the PCRA court was free to credit the testimony of Attorneys Knaresboro and Marshall, and in light of Appellant's responses in both his oral and written plea colloquies, we reject Appellant's claim that he was impaired by medication and had a "diminished capacity" when he entered his guilty plea. *See Spotz*, 896 A.2d at 1227; *Yeomans*, 24 A.3d at 1047. Accordingly, we find no merit to this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2019